583 A.2d 726

Corey R. HORNE

v.

STATE of Maryland.

No. 69, Sept. Term, 1989.

Court of Appeals of Maryland.

Jan. 9, 1991.

---

548

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY and CHASANOW, JJ., WILLIAM H. ADKINS * and HARRY A. COLE,** Associate Judges of the Court of Appeals (retired), and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

HARRY A. COLE, Judge.

We granted certiorari in this case to decide whether a non-party witness could properly invoke the Fifth Amendment privilege against compulsory self-incrimination on cross-examination in response to defense counsel's questions regarding his prior convictions.

We set forth those facts which are pertinent to resolution of this issue. Petitioner, Corey Horne, was charged with theft and unauthorized use of a motor scooter. These charges were filed following Horne's arrest for traffic violations not relevant to this appeal.[1] At the time Horne was stopped for these traffic infractions, the police officer

---

\* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; but did not participate in the decision and adoption of this opinion.

\*\* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The officer arrested Horne for driving the wrong way on a one-way street; attempting to elude police in a police vehicle by means other than fleeing on foot; failure to display registration card on demand; and failure to display a Class E license.

asked Horne why the keys did not fit the ignition of the motor scooter. Horne responded by stating that the scooter recently had been stolen. Due to Horne's arrest, the motor scooter was impounded. A subsequent computer check revealed that the motor scooter had been reported stolen. The theft and unauthorized use case was tried before a jury in the Circuit Court for Baltimore City. As part of his defense, Horne intended to show that although he had been in possession of the motor scooter, he had not stolen it. Instead a friend, Chanel Daye, [Daye] had brought the vehicle to Horne and asked him to repair it.

During presentation of the State's case-in-chief, the prosecutor called Daye to the stand. Thereafter, the following discussion took place at the bench outside the hearing of the jury:

[DEFENSE COUNSEL]: I think this defendant should be advised, should be informed of his Fifth Amendment right.

THE COURT: On this case, because of this case?

[DEFENSE COUNSEL]: Yes.

THE COURT: Does he have exposure?

[DEFENSE COUNSEL]: The State could charge him.

THE COURT: How is he exposed?

[DEFENSE COUNSEL]: Again, the defense is that he gave this stolen scooter—

THE COURT: He had possession of this?

[DEFENSE COUNSEL]: Yes.

THE COURT: All right. I will advise him of his rights.

After Daye was sworn in, the trial judge advised him of his Fifth Amendment right not to testify. The trial judge further explained to Daye that he probably would be asked questions regarding the stolen vehicle. Although Daye initially expressed a desire to remain silent, he did respond affirmatively to the State's question as to whether he knew the Petitioner. On cross-examination, when asked by defense counsel whether he had been convicted of "theft of a

car, theft of a truck and theft of some tools," Daye refused to answer.

In his defense, Horne presented two witnesses, his father and his father's girlfriend, who testified that they saw Daye with the stolen motor scooter; that Daye brought the vehicle to Horne's house; and that later Horne began working on the same vehicle, which was red. These witnesses also testified that Horne owned a motor scooter which was beige or gold in color, thus implying that Horne had no reason to steal somebody else's motor scooter. Horne did not testify. Upon completion of the presentation of Horne's case, the State was allowed to recall Daye to rebut the testimony regarding Daye's possession of the motor scooter. The trial court again advised Daye of his right to remain silent. On direct examination the State elicited the following testimony:

Q. [Prosecutor] Sir, did you ever, at any point in time, leave a red motor scooter with the defendant at his house?

A. [Daye] No.

Thereafter Daye invoked his fifth amendment privilege in response to the State's remaining questions. On cross-examination, the following testimony ensued in part:

Q. [Defense counsel]: Since your 18th birthday at which time you were represented by an attorney or given up your right to an attorney is it a fact that you have been convicted of theft of tools, theft of a car, theft of a truck, which you told me about yesterday.

[PROSECUTOR]: Objection, your honor.

A. I wish to remain silent.

THE COURT: Wait a minute. Do you have an objection?

[PROSECUTOR]: Yes, your honor.[2]

THE COURT: Overruled. Your answer is?

---

**2.** Immediately preceding the colloquy set forth, and before defense counsel had completely asked the question, the State interposed an objection arguing that the question had been asked and answered.

[DAYE]: I wish to remain silent.

[DEFENSE] Your Honor, may we approach the bench?

THE COURT: No, you may not. If you have anything to say, say it in front—

[DEFENSE]: I don't see how that can possibly incriminate him.

THE COURT: It's not for me to speculate.

All of Daye's testimony was elicited in the presence of the jury.

Horne was found guilty of theft and sentenced to four years imprisonment. Petitioner appealed and the Court of Special Appeals affirmed Horne's conviction in an unreported opinion. We granted certiorari in order to resolve the important question presented.

Daye was called to testify by the State in its case-in-chief and in rebuttal to Horne's defense. Daye invoked the privilege against self-incrimination in both instances in response to defense counsel's questions. It is to the questions asked when recalled to which Horne assigns error. He maintains that Daye's prior convictions were admissible for impeachment purposes; and, that impeachment of Daye's credibility was crucial in light of his rebuttal testimony denying any connection with the stolen motor scooter. Consequently, Horne argues, the trial court erred in permitting Daye to invoke the privilege, and thus prevent Petitioner from impeaching his credibility.

The State concedes that Daye should not have been allowed to invoke the Fifth Amendment in response to the question regarding his prior convictions. It argues, however, that there are at least two other bases upon which Horne's conviction may be affirmed. First, relying on *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984) the State maintains that Horne did not preserve this issue for appellate review by proffering that the prior convictions were final and, thus, admissible. Second, the State contends that preventing Horne from impeaching the witness's credibility

constituted harmless error in light of the other evidence establishing Petitioner's guilt.

## I

The instant case presents the collision of two closely protected constitutional rights: the Fifth Amendment privilege against compulsory self-incrimination and the Sixth Amendment right to call witnesses to testify in one's behalf. The Supreme Court has concluded that, when the two rights are juxtaposed in a given case, the Fifth Amendment privilege of the witness prevails. *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The relevant portion of the Fifth Amendment declaration provides that "No person ... shall be compelled in any criminal case to be a witness against himself." Invocation of the privilege is not without limits, however. In *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Supreme Court made this clear, stating:

> [t]he privilege afforded not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant.... *But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.... The witness is not exonerated from answering merely because he declares in so doing he would incriminate himself—his say so does not of itself establish the hazard of incrimination.* It is for the court to say whether his silence is justified, and to require him to answer if "it clearly appears to the court that he is mistaken." (citation omitted). (Emphasis provided).

341 U.S. at 486, 71 S.Ct. at 818. We have consistently applied these principles. *See Allen v. State*, 318 Md. 166, 180, 567 A.2d 118 (1989); *Choi v. State*, 316 Md. 529, 536, 560 A.2d 1108 (1989); *Adkins v. State*, 316 Md. 1, 6–7, 557 A.2d 203, 205–06 (1989); *Ellison v. State*, 310 Md. 244, 252,

528 A.2d 1271 (1987); *Richardson v. State*, 285 Md. 261, 266, 401 A.2d 1021 (1979); *Smith v. State*, 283 Md. 187, 198, 388 A.2d 539 (1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979).

Not only must we apply the *Hoffman* standards to this case, but also the standard governing use of prior convictions for impeachment purposes. Maryland Code (1974, 1989 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article sets forth the applicable rule. It provides:

(a) **In General.**—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

In *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988) we explained that "infamous crimes" included treason, the common law felonies, and the *crimen falsi.* 311 Md. at 360, 535 A.2d 449. In *Wicks v. State*, 311 Md. 376, 535 A.2d 459 (1988) we further discussed those crimes falling under the category of *crimen falsi* and concluded that the crime of theft fell within that category. 311 Md. at 382, 535 A.2d 459. More important, in *Wicks* we made it clear that infamous crimes were *automatically* admissible for impeachment purposes. *Id.* at 383, 535 A.2d 459.

## II

■ Behind this backdrop, we now turn to the instant case to address Daye's invocation of the Fifth Amendment privilege. As previously set forth, Daye invoked the privilege in response to defense counsel's questions regarding his prior convictions. In affirming the trial court's ruling sustaining the witness's invocation of the privilege, the Court of Special Appeals explained:

As is made clear by *Ellison [v. State*, 310 Md. 244, 528 A.2d 1271 (1987) ], if the conviction is not "final," the privilege may still be invoked. There is nothing in the record before us as to when Daye's alleged convictions

occurred. There was no proffer to the trial court as to whether he had been sentenced, whether the time for appeal had expired, or whether an appeal was then pending. In the absence of such proffer, the matter is not preserved for our review. *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984).

 The Court of Special Appeals apparently believed that it was incumbent upon Horne, who sought to impeach the witness, to proffer that the prior convictions qualified because they were final. The Court of Special Appeals resolved that issue by concluding that because Horne did not proffer that the convictions were final or present certified records establishing that fact, then, under *Mack, supra,* the issue was not preserved. We disagree. It seems to us that the person invoking the privilege against self incrimination has the burden to show that his convictions were not final and, therefore, might be incriminating. The State relies on *Mack v. State,* as support for the proposition that the defendant in this case must carry the burden.

In *Mack,* we were faced with, *inter alia,* a challenge to the trial court's ruling excluding evidence supporting a claim of self-defense. In concluding that there was no prejudicial error, we identified at least three instances where erroneous rulings on the admissibility of evidence would not constitute reversible error. Those instances include (1) where evidence is erroneously excluded at one point in a trial but admitted without objection at another point; (2) where a question is answered, followed by an objection which is erroneously sustained, but no motion to strike is made; and (3) where a party does not proffer to the trial court the contents and relevancy of excluded testimony. 300 Md. at 603, 479 A.2d 1344. We found all three circumstances applicable in *Mack.* Although we fully recognize the validity of these principles as stated in *Mack,* we are convinced that they have no application in the present context.

**556**

■ The basis for this conclusion becomes clearer when placed in the factual context of this case. Here, Horne's counsel asked Daye to affirm or deny the fact that he previously had been convicted of theft of tools, theft of a car and theft of a truck. Defense counsel posed his question to further reveal that Daye, himself, had provided defense counsel with this information the preceding day.[3] Long ago we discussed that this procedure should be followed. *Green v. State,* 161 Md. 75, 155 A. 164 (1931). In *Green,* the Court unequivocally stated that the credibility of a witness could be impeached by proof of a conviction established by record, by certificate authorized by statute, or through the admission of the witness. 161 Md. at 83–84, 155 A. 164. Furthermore we reaffirmed this position in *Prout,* and *Wicks,* that prior convictions for infamous crimes were automatically admissible to impeach a witness's credibility. The fact that prior convictions for infamous crimes are automatically admissible to impeach a witness's credibility distinguishes this case from *Mack.* Because theft is an infamous crime and automatically admissible its relevance to impeach Daye's credibility is obvious. Thus, a proffer was not required in order to preserve this issue for appeal.

In the instant case, we hold that the trial court should not have sustained Daye's invocation of the Fifth Amendment in response to defense counsel's question. Use of the prior convictions to impeach Daye's credibility was proper.

---

**3.** In its brief, the State cites *Taylor v. State,* 278 Md. 150, 154, 360 A.2d 430 (1976) as support for the proposition that "the best method of showing a prior conviction is to proffer evidence out of the jury's presence." This paraphrase from Taylor was made in the context where a defendant's character witness was asked questions regarding his knowledge of defendant's prior convictions. In order to prevent a prosecutor's bad faith attempt to improperly impeach a defendant's credibility, we expressed the belief that a good practice was to proffer to the court out of the jury's presence the relevancy of the prior conviction. 278 Md. at 153, 360 A.2d 430. Of course, if the conviction was for an infamous crime, there is no question of its relevance.

## III

■ As an alternative basis for affirming Horne's conviction, the State also contends that any error was harmless because the other evidence overwhelmingly supported Horne's conviction for theft based on possession.[4] The State argues that Daye's statement that he did not give the motor scooter to Horne could not have influenced the verdict. This is so, the State reasons, because the verdict of guilty of theft was based on the jury's finding that Horne possessed the motor scooter knowing that it was stolen. Moreover, Horne's statement to the police officer that the motor scooter had been stolen clearly established his scienter.

Once again, we disagree. It is clear that the State effectively rebutted Horne's defense—that he only had possession of the vehicle to repair it—through Daye's testimony. For all we know, Horne's conviction may have hinged upon Daye's testimony. A juror sent a question to the court asking the trial judge whether the jury should assume Daye was guilty, since he "took the fifth," or whether the incident should be forgotten altogether. The trial court never directly responded to this question,[5] nor did the trial judge give an instruction regarding the significance of Daye's claim of privilege. Even in the face of Horne's statement to the police officer, we cannot say, beyond a reasonable doubt, that the error committed here in no way influenced the verdict. *Johnson v. State*, 292 Md. 405, 430,

---

4. Under the theft statute, Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 342, showing that a person possessed stolen property constitutes theft. And, knowledge is an element of that offense.

5. This jury question was submitted before Daye was recalled to give rebuttal testimony. The trial judge decided, after reading the question, that it would be answered in what he said to Daye when advising him of his Fifth Amendment Rights. During the trial court's explanation of those rights to Daye, the judge stated: "the fact that you do or do not testify in this case.... does not mean, of course, that you are [guilty] of anything...." We will not assume, however, that the jury noted this statement as a response to the question previously submitted by the juror.

**558**

439 A.2d 542 (1982). It is very possible that, had Daye's credibility been impeached through the excluded testimony, the jury would have dismissed the alleged statement suggesting knowledge and accepted Horne's defense. Consequently, the error was not harmless and the judgment must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR A NEW TRIAL. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS IN THE COURT OF SPECIAL APPEALS AND THIS COURT.