619 A.2d 105

**William Lee BEALES**

v.

**STATE of Maryland.**

**No. 64, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 5, 1993.

264

Martha G. Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief) Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

Maryland Rule 1–502 governing the impeachment of witnesses by evidence of a prior criminal conviction took effect January 1, 1992. It provides in pertinent part:

> *"(a) Generally.*—For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

*"(b) Time Limit.*—Evidence of a conviction under this Rule is not admissible if a period of more than 15 years has elapsed since the date of the conviction."

The instant question is whether the trial court erred in admitting, as impeachment evidence, the theft conviction of a defense witness testifying at the appellant Beales's trial. More specifically, we must decide whether the conviction was admissible per se, or whether the rule required that the trial court first balance the conviction's probative value against its potential for unfair prejudice to the accused.

## I

Beales was tried before a jury in the Circuit Court for Baltimore City on charges of battery and carrying a deadly weapon with intent to injure.[1]  The State's principal witness, Sandra Herbert, testified that on the evening of September 3, 1990, while walking on the street with her companion, Tony Pevia, they were approached by Beales and two other men.  She stated that Beales uttered a racial epithet, and thereafter stabbed her beneath the shoulder with a small knife.  Herbert added that Beales then struggled with Pevia before running away.  Officer Herman Janitzky testified that when he responded to the scene, he found Herbert bleeding from a half-inch puncture wound in the shoulder.  Janitzky acknowledged that no knife was found either at the scene or in Beales's possession when he was arrested about ten minutes later.

Tina McGee, Beales's girlfriend, and Joseph Lambert, one of the two men accompanying him on the street, testified for the defense that they observed the altercation.  They stated that Pevia initiated the struggle by attacking Beales, who passively shielded himself from the other man's punches while Herbert stood off to one side.  Both defense witnesses stated that Beales did not have a knife during the incident.

---

1.  The trial commenced on January 9, 1992, eight days after Rule 1–502 took effect.

Towards the end of the State's cross-examination of Lambert, the prosecutor asked him whether he had ever been convicted of a crime of dishonesty. Defense counsel's objection to the question was overruled, and the witness admitted that he had once been convicted of theft. At the ensuing bench conference, defense counsel said to the court:

"(A)s I understand the new rule [1–502] regarding the impeaching of a witness on prior convictions, my understanding is that the Court has to make some kind of determination, even crimes involving an element of dishonesty are not automatically impeachable anymore. The Court has to make a preliminary determination of whether the appropriate value of the evidence is outweighed by the prejudice or something, but there must be some preliminary determination regarding that conviction before Counsel can elicit those questions."

The prosecutor described defense counsel's view of Rule 1–502 as "hogwash," adding: "[T]he only thing that rule did was change that you could not do felony drugs anymore, that's the only thing. You can always attack bias."

The court's response and the subsequent testimony we set forth verbatim:

"THE COURT: "[T]his is a question of credibility. He's got a right to test his credibility and this is an appropriate question. Under the new rule, as amended, or under the prior rule, he asked the question properly. He has a right to put that information and the answer before the Jury. Overruled.

THE COURT: You may answer the question.

BY [the prosecutor]:

Q When was that, sir, when you were convicted of theft?

A I can't remember that. I don't know.

Q You don't remember?

A No. That's been, when I was about twenty years old and I'm thirty-four now.

Q Is that your only conviction of theft?

A Yes."

Beales was convicted of battery and sentenced to three
years in prison.  He appealed to the Court of Special
Appeals, contending that the trial court erred when it
refused to employ the balancing test required by Rule 1–502
before it admitted Lambert's theft conviction into evidence.
We granted certiorari, prior to a determination by the
intermediate appellate court, to consider the important issue
raised in this case.

## II

Before the advent of Rule 1–502, the law of impeachment
by prior convictions was governed by Maryland Code (1973,
1989 Repl.Vol.) § 10–905(a) of the Courts and Judicial Pro-
ceedings Article, which provided in pertinent part: "Evi-
dence is admissible to prove the interest of a witness ... or
the fact of his conviction of an infamous crime."  This
Court's cases, notably our impeachment trilogy, explicate
the statute.  *See Prout v. State,* 311 Md. 348, 535 A.2d 445
(1988); *Watson v. State,* 311 Md. 370, 535 A.2d 455 (1988);
and *Wicks v. State,* 311 Md. 376, 535 A.2d 459 (1988).
Under the former law, a conviction of an infamous crime,
i.e., one of the common-law felonies or one of the *crimen
falsi,* was admissible per se for impeachment purposes.
*Prout, supra,* 311 Md. at 360, 535 A.2d 445.  The admissi-
bility of convictions for other, lesser crimes bearing on a
witness's credibility was left to the discretion of the trial
court.  *Id.* at 363, 535 A.2d 445.  Convictions for non-
infamous crimes which do not bear upon the witness's
propensity to be truthful under oath were not admissible.
*Id.*

As used in Rule 1–502, the concept of an infamous
crime retains its traditional meaning.  Crimes historically
classified as *crimen falsi* include crimes in the nature of
perjury, false statement, criminal fraud, embezzlement,
false pretense, or any other offense involving some element
of deceitfulness, untruthfulness, or falsification bearing on

the witness's propensity to testify truthfully. *Wicks, supra,* 311 Md. at 382, 535 A.2d 459. As it is the embodiment of deceitfulness, theft is among the *crimen falsi. See id.* at 382–383, 535 A.2d 459; *Horne v. State,* 321 Md. 547, 556, 583 A.2d 726 (1991). Therefore, Lambert's prior conviction of theft qualifies as one of the *crimen falsi* embraced within the larger category of infamous crimes.

The dispositive issue before us thus turns on the extent to which the rule requires the trial court to weigh the probative value of a conviction in regard to a witness's credibility against the prejudicial effect of such evidence. The State argues that Rule 1–502(a) requires automatic admission of evidence of conviction when an infamous crime is used to impeach, and that the discretionary balancing test of probativeness and prejudice is reserved only for other crimes relevant to credibility. In this regard, the State relies upon that principle of statutory construction pursuant to which a qualifying clause ordinarily is confined to the immediately preceding words or phrase, especially absent a comma before the qualifying language. *Sullivan v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245 (1977). By such a construction, the language requiring the court to perform a preliminary balancing test would apply only to the immediately preceding words, i.e., "or other crime relevant to the witness's credibility," but not to an infamous crime. The State also asserts more broadly that the rule should be interpreted in a manner consistent with prior law governing impeachment, where evidence of a conviction for an infamous crime was automatically admissible on a per se basis. *See Horne, supra,* 321 Md. at 556, 583 A.2d 726; *Wicks, supra,* 311 Md. at 383, 535 A.2d at 459; *Prout, supra,* 311 Md. at 360, 535 A.2d 445.

■ We share Beales's view, however, that the new rule now requires a preliminary determination of probativeness and potentially unfair prejudice for *all* convictions used to impeach credibility. Both its plain language and the legislative history underlying its adoption dispel any doubt as to the operation of Rule 1–502(a).

Our cases hold that the canons and principles of construing statutes apply equally to the interpretation of this Court's rules. *State v. Romulus*, 315 Md. 526, 533, 555 A.2d 494 (1989); *accord In re Leslie M.*, 305 Md. 477, 481, 505 A.2d 504 (1986). It is well settled that in construing a statute or rule to ascertain and effectuate its goal, our first recourse is to the words of the rule, giving them their ordinary and natural import. *NCR Corp. v. Comptroller*, 313 Md. 118, 124, 544 A.2d 764 (1988); *Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 493 A.2d 341 (1985). Here, we understand the phrase in Rule 1–502(a) "but only if the crime was an infamous crime or other crime relevant to the witness's credibility" to function as a single, integral component of that rule. The language flows most naturally when read without a pause; and we also observe that there is no comma before the word "or" that might otherwise dictate one treatment for infamous crimes and a different treatment for other crimes. As such, the qualifying language that spells out the requisite balancing of probative value versus danger of unfair prejudice naturally modifies the entire component that precedes it. The balancing test applies equally to infamous crimes and to other crimes bearing on credibility.

Apart from the language itself, all available documentation of the rule's creation supports the same result. Rule 1–502 was originally proposed—in another form—to the Court by its Standing Committee on Rules of Practice and Procedure. The Committee had earlier developed a sequence of drafts in response to our suggestion in *Wicks, supra*, 311 Md. at 384, n. 5, 535 A.2d 459, that a formal rule in this area would be appropriate. While the draft proposals frequently changed shape as to both form and substance, the Committee's preference for a broadly-applied balancing test remained constant throughout. Its initial version subjected impeachment by infamous crimes and other crimes relevant to credibility to the probativeness-prejudice test in criminal cases. *See* the Minutes of the Rules Committee, meeting of April 22–23, 1988, at 30–31.

The Committee later described the then-existing law of impeachment as "dangerously inflexible in its mandate" that convictions for all infamous crimes must be admitted per se into evidence. Minutes of the Rules Committee, meeting of September 7–8, 1990, at 5.

In its 113th Report, the Rules Committee proposed an impeachment rule in which the balancing test stood apart as a separate, limiting element of the rule that reached all convictions. *See* 17 *Maryland Register* 2722–2723 (November 16, 1990). This feature remained intact in the subsequent proposal made in the Committee's 117th Report. *See* Minutes of the Rules Committee, meeting of May 17–18, 1991, at 4–5; and 18 *Maryland Register* 1907 (August 23, 1991). Most decisively, the scope of Rule 1–502(a) was expressly considered at the public meeting conducted by the Court on October 24, 1991, immediately prior to final adoption of the current rule. Our review of that discussion, preserved on audio tape, leaves no doubt that the rule aims to impose a weighing of probative value against unfair prejudice for all convictions used to impeach.[2]

---

**2.** We transcribe here the pertinent parts of the October 24, 1991, audio tape:

McAuliffe, J.: "I move that we delete [other proposed language] so that it reads 'but only if the crime was an infamous crime or other crime relevant to the witness's credibility,' the effect of which would be to preserve the existing law concerning what crimes are available for impeachment, except to add to it a weighing and balancing in every instance...."

Karwacki, J.: "I second that."

Chasanow, J.: "I'll accept it as an amendment."

\* \* \* \* \* \*

Chasanow, J.: "Everything gets weighed...."

Bell, J.: "That's right. That simplifies everything."

\* \* \* \* \* \*

Murphy, C.J.: "Is it clear that the weighing is going to go to both of these?"

Chasanow, J.: "There's only one component. The weighing goes to every crime; every crime that's admissible gets weighed."

\* \* \* \* \* \*

McAuliffe, J.: "There's no comma in there. The weighing is intended to apply to infamous and other crimes."

█ In sum, new Rule 1–502(a), by design, differs from earlier Maryland law in that it abandons every vestige of per se admissibility regarding evidence of prior convictions for the purposes of impeachment. A trial court must first test all such evidence that a witness has been convicted of an infamous crime or other crime bearing on credibility, balancing its probativeness against its potential for unfair prejudice to the witness or to the objecting party. The rule is thus more lenient to the objecting party than its federal counterpart, which permits automatic admission of impeaching convictions for crimes that involve dishonesty or false statement. *See* Fed.R.Evid. 609(a)(2). The establishment of the rule falls fully within the Court's power to "regulat[e] ... the admissibility of evidence in all cases, including criminal cases." *See* Maryland Code (1973, 1989 Repl.Vol.) § 1–201(a) of the Courts and Judicial Proceedings Article. To the extent that Rule 1–502(a) is inconsistent with the impeachment statute, § 10–905 of the Courts and Judicial Proceedings Article, the rule of this Court prevails. *See* Maryland Rule 1–201(c) (rules do not supersede common law or statutes unless inconsistent with them); *Johnson v. Swann,* 314 Md. 285, 289, 550 A.2d 703 (1988) (Maryland Rules generally apply despite a prior statute to the contrary and until a subsequent statute would repeal or modify them).

### III

█ Turning to the facts in this case, we think that the trial court did not adequately conduct a balancing of Lambert's 14–year–old theft conviction in terms of the light it might shed on his truthfulness against its potentially unfair prejudice to Beales's defense. In so deciding, we are conscious of the strong presumption that judges properly perform their duties. *Schowgurow v. State,* 240 Md. 121, 126, 213 A.2d 475 (1965). We also recognize that trial judges are not obliged to spell out in words every thought and step of logic, and that the trial court did refer to "the new rule" and "the prior rule."

■ Nevertheless, when viewed as a whole, the trial court's elliptical remarks do not sufficiently demonstrate that it assessed the relative weights of probative value and prejudicial danger. First, the trial court focused largely on the proper form of the impeaching question, rather than on its possible impact. Second, the trial court insisted that the State had a "right" to inform the jury of Lambert's conviction, a word that suggests obligatory admissibility of the evidence, rather than discretionary admissibility based on the balancing test. Third, the trial court admitted the evidence knowing only that Lambert had been convicted of theft, but not knowing when he had been convicted; Lambert testified that his conviction was fourteen years old only at the very end of the exchange, after the trial court had ruled. The remoteness of a prior conviction is a critical factor to be weighed in the balance. Here it was not.

Even more tellingly, new Rule 1–502(b) places a cap of fifteen years on prior convictions used to impeach. Had Lambert's conviction been sixteen years old, it would have been barred altogether by the new rule. The court's failure to ascertain the vintage of the conviction before deciding the question indicates strongly that it adhered to the former law of impeachment permitting per se use of convictions of infamous crimes no matter how remote. We deduce that the trial court let in the evidence solely because Lambert had been convicted of theft, a *crimen falsi* and an infamous crime, as was proper under the old impeachment statute. The record thus demonstrates that the trial court was not yet familiar with, and did not appropriately apply, the new rule that had gone into effect only the week before.

## IV

■ When an appellant in a criminal case establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed harmless. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). At the trial,

the prosecution and the defense presented dramatically different accounts of the incident leading to Beales's arrest. The relative validity of those accounts depended largely on the credibility of the witnesses. Lambert was a primary defense eye-witness, the observer closest to the scene of the altercation involving Herbert, Pevia, and Beales; he testified that he saw the event from start to finish. Lambert's credibility was tainted, to a degree we cannot specify without speculating, by evidence that he was a convicted thief. The State in its closing argument reminded the jury of that fact by saying: "Judge Mr. Lambert. He told you he was convicted of theft. Why is that important? Not because he did it, but because he's been [Beales's] friend for ten years and maybe he's not telling the truth." Reviewing the record before us, we cannot say beyond a reasonable doubt that evidence of Lambert's theft conviction did not sway the jury that found Beales guilty of battery.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.