# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 28, 2003

Ms. Cathy L. Hendricks, ASID/IIDA
Executive Director
Texas Board of Architectural Examiners
333 Guadalupe, Suite 2-350
Austin, Texas 78701-3942

Opinion No. GA-0064

Re: Texas Board of Architectural Examiners' authority under chapter 53 of the Occupations Code to require an applicant for registration or a registrant to report criminal history information (RQ-0627-JC)

Dear Ms. Hendricks:

You raise several issues concerning the authority of the Texas Board of Architectural Examiners (the "Board") to require an applicant for registration or a registrant to report criminal history information to the Board under chapter 53 of the Occupations Code.[1]

## I. Facts

You state that Board rules require an applicant for registration to provide information regarding the applicant's criminal history. *See* Request Letter, *supra* note 1, at 1; *see also* 22 TEX. ADMIN. CODE §§ 1.149, 3.149, 5.158 (2002) (Texas Board of Architectural Examiners, Criminal Convictions). Board rules similarly require a registrant to report any criminal conviction, other than a conviction for a minor traffic infraction, to the Board within thirty days after a court enters the conviction, and, in the course of each annual registration renewal, to confirm that the registrant has reported any criminal convictions entered in the past year. *See* Request Letter, *supra* note 1, at 1; *see also* 22 TEX. ADMIN. CODE §§ 1.149, 3.149, 5.158 (2002) (Texas Board of Architectural Examiners, Criminal Convictions). According to your letter, limited Board resources require it to rely upon applicants and registrants to provide their own criminal history information. *See* Request Letter, *supra* note 1, at 6. You report that a registrant "has refused to provide criminal history data upon renewing his registration, citing various constitutional rights." *Id.* at 1. Another registrant "was convicted of an offense in federal court and completed a term of imprisonment before the Board learned of the conviction." *Id.* In light of these two situations, you ask about the application of Occupations Code chapter 53, which

---

[1]Letter from Ms. Cathy L. Hendricks, ASID/IIDA, Executive Director, Texas Board of Architectural Examiners, to Honorable John Cornyn, Texas Attorney General, at 8-9 (Oct. 31, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

authorizes a state licensing authority to revoke a convicted person's license in certain circumstances. *See id.*; *see also* Tex. Att'y Gen. Op. No. JC-0130 (1999) at 3 (discussing chapter 53).

## II.   Applicable Statutes and Regulations

Chapter 1051 of the Occupations Code creates the Board, *see* Tex. Occ. Code Ann. § 1051.101 (Vernon 2003), and authorizes it to adopt necessary rules, *see id.* § 1051.202. The statute prohibits any person from engaging in the practice of architecture unless that person has registered with the Board. *See id.* § 1051.301(a). To be eligible to register under the statute, an applicant must pass an examination; present evidence that he or she graduated from an institution of higher education and has satisfactory work experience in architecture; and pay a fee. *See id.* § 1051.305(b). A registrant must renew the registration annually by paying a required renewal fee and submitting proof that the registrant complied with the Board's continuing education requirement. *See id.* §§ 1051.351(a), 1051.353(a); *see also id.* §§ 1051.354, 1051.356 (exempting fee payment for certain military personnel and requiring Board to establish continuing education requirement). An applicant's or registrant's failure to comply with chapter 1051 "or a [B]oard rule adopted under" the chapter may constitute grounds for a disciplinary action or a criminal penalty. *Id.* §§ 1051.402(1), 1051.503(a). Although the Board is authorized to discipline a person who violates chapter 1051 or a related Board rule, a person's criminal activity is not expressly listed as grounds for disciplinary action. *See id.* § 1051.402.

In addition, the Board regulates the practice of landscape architects and interior designers under chapters 1052 and 1053 of the Occupations Code. *See id.* chs. 1052, 1053. Like an architect, both a landscape architect and an interior designer must register with the Board. *See id.* §§ 1052.151, 1053.151. An applicant for either registration must pass an examination; demonstrate "satisfactory experience" in the relevant field; and submit a Board-set fee. *Id.* §§ 1052.154, 1053.152. Registration in either field must be renewed annually, *see id.* §§ 1052.201, 1053.201, and must include a renewal fee and satisfactory proof that the person complied with the Board's continuing education requirement. *See id.* §§ 1052.203, 1053.203. The Board may penalize a registrant who has violated relevant laws. *See id.* §§ 1052.301-.302, 1053.251. While the Board may discipline a landscape architect on various grounds, including "committing an act of gross negligence, incompetency, or misconduct in the practice of landscape architecture," *see id.* § 1052.252(7), the Board does not have express statutory authority to discipline a registered landscape architect for criminal activity. *Accord* Request Letter, *supra* note 1, at 2. By contrast, the Board is expressly authorized to discipline a registered interior designer who has been "convicted of a felony or of a misdemeanor involving moral turpitude." Tex. Occ. Code Ann. § 1053.252(2) (Vernon 2003); *accord* Request Letter, *supra* note 1, at 2.

As a licensing authority, the Board also is subject to chapter 53 of the Occupations Code, which applies to state licensing authorities generally. Section 53.021 authorizes a licensing authority to revoke, suspend, or deny the license of an individual who has been convicted of certain crimes:

(a) A licensing authority may suspend or revoke a license, disqualify a person from receiving a license, or deny to a person the opportunity to take a licensing examination on the grounds that the person has been convicted of a felony or misdemeanor that directly relates to the duties and responsibilities of the licensed occupation.

(b) A license holder's license shall be revoked on the license holder's imprisonment following a felony conviction, felony community supervision revocation, revocation of parole, or revocation of mandatory supervision.

TEX. OCC. CODE ANN. § 53.021 (Vernon 2003); *see also id.* §§ 53.022-.023 (listing factors a licensing authority must consider "[i]n determining whether a criminal conviction directly relates to" a particular occupation). A Texas licensing authority must issue and file with the secretary of state "guidelines [that] state the reasons a particular crime is considered to relate to a particular license and any other criterion that affects" the licensing authority's decisions. *Id.* § 53.025(a)-(b). For purposes of chapter 53, a license includes "a state agency . . . registration," TEX. GOV'T CODE ANN. § 2001.003(2) (Vernon 2000); *see also* TEX. OCC. CODE ANN. § 53.001 (Vernon 2003) (incorporating definitions in Government Code chapter 2001). Consequently, registration with the Board is subject to chapter 53.

Board rules require applicants and registrants to provide criminal history information:

(1) Each Applicant will be required to provide information regarding the Applicant's criminal history as part of the application process. Each Registrant will be required to report any criminal conviction to the Board within thirty (30) days of the date the conviction is entered by the court and to verify the status of the Registrant's criminal history on each registration renewal form. An Applicant or Registrant shall not be required to report a conviction for a minor traffic offense.

(2) An Applicant or Registrant who has been convicted of any crime will be required to provide a summary of each conviction in sufficient detail to allow the executive director to determine whether it appears to directly relate to the duties and responsibilities of a registered architect.

(3) If the executive director determines the conviction might be directly related to the duties and responsibilities of a registered architect, the Board's staff will obtain sufficient details regarding the conviction to allow the Board to determine the effect of the conviction on the Applicant's eligibility for registration or on the Registrant's fitness for continued registration.

22 TEX. ADMIN. CODE § 1.149 (2002) (Texas Board of Architectural Examiners, [Architects'] Criminal Convictions); *cf. id.* § 3.149 (Texas Board of Architectural Examiners, [Landscape Architects'] Criminal Convictions); *cf. id.* § 5.158 (Texas Board of Architectural Examiners, [Interior Designers'] Criminal Convictions). To determine whether a particular criminal

conviction directly relates to a registered architect's duties and responsibilities, the Board and its executive director will consider

> (1) the nature and seriousness of the crime;

> (2) the relationship of the crime to the purposes for requiring a license to practice architecture;

> (3) the extent to which architectural registration might offer an opportunity to engage in further criminal activity of the same type as that in which the Applicant or Registrant had been involved; and

> (4) the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of a registered architect.

*Id.* § 1.149(b); *see also id.* § 1.149(c) (listing additional factors that Board and executive director must consider); *cf. id.* § 3.149(b) (relating to landscape architects); *cf. id.* § 5.158(b) (relating to interior designers). The Board has determined by rule that certain crimes directly relate to a registered architect's duties and responsibilities, including criminal negligence; soliciting, offering, giving, or receiving any form of bribe; and the unauthorized use of a client's or employer's property, funds, or proprietary information. *Id.* § 1.149(d); *cf. id.* § 3.149(d) (relating to landscape architects); *cf. id.* § 5.158(d) (relating to interior designers).

## III.   Questions

### A.   Constitutional Issues

You first ask whether the Board exceeds its authority or encroaches upon applicants' or registrants' constitutional rights by requiring them to provide criminal history information (1) as part of the application process; (2) within thirty days of a conviction; and (3) annually as part of the registration renewal process. Because the same constitutional principles apply at each of these points in the registration process, we answer your three questions as one.

A landscape architect has submitted written materials raising three constitutional concerns regarding the Board's practice of requiring registrants to report their own convictions.[2] First, he suggests that the practice infringes a registrant's general right to privacy under the Federal Constitution. *See* Verdoorn Letter, *supra* note 2, at 1; *see also Whalen v. Roe*, 429 U.S. 589, 598-600 (1977) (recognizing two different, constitutionally protected privacy interests). Second, he suggests that the required disclosure places a registrant who has been convicted of a crime in double jeopardy, thereby violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *See* Letter from Mr. Joe Verdoorn, Executive Vice President,

---

[2]Letter from Mr. Joe Verdoorn, Executive Vice President, Richardson Verdoorn, to Ms. Naureen Rashid, Staff Attorney, Enforcement/Education Division, Texas Board of Architectural Examiners, at 1 (Jan. 8, 1996) (on file with Opinion Committee) [hereinafter Verdoorn Letter].

Richardson Verdoorn, to Ms. Lucy Jankowski, Enforcement/Education Assistant, Texas Board of Architectural Examiners (Oct. 23, 1995) (on file with Opinion Committee). Third, he avers that the Board's broadly worded question requires a registrant to incriminate him- or herself, thereby violating the Fifth Amendment's prohibition against required self-incrimination. *See* Request Letter, *supra* note 1, at 8.

### 1.    *Right to privacy*

While the Federal Constitution nowhere expressly mentions an individual's right to privacy, a long line of judicial decisions has recognized the right under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. *See Whalen*, 429 U.S. at 599-600 nn.24-26; *City of Sherman v. Henry*, 928 S.W.2d 464, 467 (Tex. 1996). In the words of the Texas Supreme Court, the United States Supreme Court has noted that the Federal Constitution protects "at least two different kinds of privacy interests": (1) an individual's right to avoid disclosing personal information; and (2) an individual's right "to make certain kinds of important decisions and to engage in certain kinds of conduct." *City of Sherman*, 928 S.W.2d at 467. The issue you raise arguably implicate the first kind of constitutional privacy interest.

The Board's requirement that applicants and registrants report criminal convictions to the Board does not violate an applicant's or a registrant's constitutional right to privacy, which applies only to inherently private information. *See Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996). The fact of a criminal conviction is within the public domain. *See id.* An individual has no privacy right in a public record of his or her criminal conviction. *See id.*

### 2.    *Right to not be twice put in jeopardy*

The Fifth Amendment to the United States Constitution prohibits the government from subjecting a person "for the same offence" to being "twice put in jeopardy of life or limb." U.S. CONST. amend. V. This provision, the Double Jeopardy Clause of the Fifth Amendment, applies to states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). Under United States Supreme Court jurisprudence, the Double Jeopardy Clause does not prohibit imposing any additional sanction that would commonly "be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943) (quoting *Moore v. Illinois*, 14 L. Ed. 306 (1852))). Rather, the clause protects only against imposing "multiple *criminal* punishments for the same offense." *Id.* at 99. The denial, suspension, or revocation of a professional license is not a criminal penalty and thus does not invoke constitutional protections against double jeopardy. *See, e.g., State v. Wolf*, 549 N.W.2d 183, 187 (Neb. 1996) (per curiam); *Sweeny v. State Bd. of Funeral Dirs.*, 666 A.2d 1137, 1140 (Pa. Commw. Ct. 1995).

Because denying or revoking a registration is not a criminal penalty, the Fifth Amendment's Due Process Clause does not apply to the Board's requirements regarding an applicant's or a registrant's criminal history.

### 3.     *Right to avoid compelled self-incrimination*

The Fifth Amendment to the United States Constitution also guarantees an individual's right not to "be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. As the United States Supreme Court noted over a century ago, this privilege against compulsory self-incrimination protects witnesses from the "'real and appreciable'" danger of exposing themselves to criminal liability. *Brown v. Walker*, 161 U.S. 591, 599 (1896) (quoting *Reg. v. Boyes*, 1 B. & S. 311, 330 (Q.B. 1861)).

While the Fifth Amendment applies to the states through the Fourteenth Amendment to the United States Constitution, *see Malloy v. Hogan*, 378 U.S. 1, 6 (1964), it does not restrict a state's "broad authority to devise both requirements for admission and standards of practice for those who wish to enter the professions." *Spevack v. Klein*, 385 U.S. 511, 523 (1967) (Harlan, J., dissenting)[3] (and cases cited therein). More fundamentally, an individual may not invoke the Fifth Amendment's protection against self-incrimination to avoid acknowledging a prior final conviction. *See Mitchell v. United States*, 526 U.S. 314, 326 (1999) ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege."). This Fifth Amendment right pertains to compelled answers that might incriminate the witness in a future criminal proceeding, not with acknowledging a crime for which the witness has already been convicted. *See Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (stating that Fifth Amendment permits a person "not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings"); *Horne v. Maryland*, 583 A.2d 726, 729 (Md. 1991) (stating that a person invoking the privilege against self-incrimination must show that prior convictions were not final "and, therefore, might be incriminating").

Accordingly, the fact that the Board requires an applicant or registrant to report criminal convictions does not contravene the constitutional right against self-incrimination.

### B.     Chapter 53, Occupations Code and Attorney General Opinion JM-482 (1986)

Your remaining questions concern the Board's responsibilities under chapter 53 of the Occupations Code. *See* Request Letter, *supra* note 1, at 8-9; *see also* TEX. OCC. CODE ANN. ch. 53 (Vernon 2003).

### 1.     *Refusal to provide requested criminal history information*

You ask whether the Board may revoke a registration, take disciplinary action against a registrant, or disqualify an applicant "solely" because he or she refused "to provide requested information regarding criminal convictions." Request Letter, *supra* note 1, at 8.

---

[3]While Justice Harlan's comments were made in a dissenting opinion, the portion of the dissent from which this statement is taken points out previous holdings of the Court that are "in no way questioned by today's decision." *Spevack*, 385 U.S. at 523 (Harlan, J., dissenting).

Whether, under chapter 53, the Board may or must revoke a registration or declare an applicant ineligible depends on the specific conviction record. *See* TEX. OCC. CODE ANN. § 53.021 (Vernon 2003). Chapter 53 does not expressly mandate revocation or ineligibility on a registrant's or applicant's refusal to answer.

Nonetheless, an applicant or registrant who refuses to provide requested information regarding criminal convictions violates Board rules requiring applicants and registrants to provide that information. *See* 22 TEX. ADMIN. CODE §§ 1.149(a)(1), 3.149(a)(1), 5.158(a)(1) (2002) (Texas Board of Architectural Examiners, Criminal Convictions). The Board's enabling act authorizes the Board to take disciplinary action against a person who violates a Board rule. *See* TEX. OCC. CODE ANN. §§ 1051.402(1), 1052.252(1), 1053.252(1) (Vernon 2003). In addition, with respect to interior designers in particular, the Board may discipline an interior designer who has been convicted of a felony or a misdemeanor "involving moral turpitude." *Id.* § 1053.252(2).

Because a refusal to provide criminal history information violates Board rules, the Board may revoke a registration, take disciplinary action against a registrant, or consider an applicant ineligible for registration.

2.     *Revocation under section 53.021(b), Occupations Code*

Next, you ask whether section 53.021(b) requires the Board to revoke a registration if the registrant "was incarcerated as the result of a felony conviction unrelated to the registrant's profession but is no longer incarcerated at the time the revocation proceeding is commenced." Request Letter, *supra* note 1, at 8. Your question stems from Attorney General Opinion JM-482, which construes the precodified version of section 53.021. *See id.* at 3-4.

Attorney General Opinion JM-482 reads subsection (b), which states that "[a] license holder's license shall be revoked on the license holder's imprisonment," to require a licensing authority "to revoke a license when its holder is finally convicted of a felony," with "no discretion to act otherwise." TEX. OCC. CODE ANN. § 53.021(b) (Vernon 2003); Tex. Att'y Gen. Op. No. JM-482 (1986) at 4. The opinion concludes that subsection (b) "should be limited to a felony conviction" that results in the licensee's actual incarceration in a state or other penitentiary. Tex. Att'y Gen. Op. No. JM-482 (1986) at 7. Moreover, the opinion continues, subsection (b) requires solely that a convicted felon's license be suspended "only while the felon is physically incarcerated." *Id.* And, while a licensing board must revoke a license "when the licensee's felony conviction results in . . . incarceration, or when [the licensee's] felony probation, parole, or mandatory supervision is revoked," the license may be reinstated in accordance with sections 53.021(a), 53.022, 53.023, and 53.024. *Id.* Other than the statute's 1999 codification, which was intended to be nonsubstantive, the legislature has not revised these provisions since 1986, when Attorney General Opinion JM-482 was issued. *See* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, secs. 53.001-.052, 1999 Tex. Gen. Laws 1431, 1446-49; *see also id.* § 7, 1999 Tex. Gen. Laws at 2440 (declaring that act is intended as a recodification only, without substantive change).

Section 53.021(b) revokes a license by operation of law: "A license holder's license *shall be revoked* on the license holder's imprisonment . . . ." TEX. OCC. CODE ANN. § 53.021(b) (Vernon 2003) (emphasis added). Thus, a licensed felon who is imprisoned or whose community supervision, parole, or mandatory supervision is revoked loses his or her license by operation of law. Although the relevant licensing authority has a duty to revoke the license, as JM-482 makes clear, the fact that the licensing authority does not do so does not alter the revocation. In the situation you pose, therefore, the registration was revoked at the time the registrant was incarcerated on a felony conviction. Now that the former registrant is no longer incarcerated, he or she may apply for registration again, although the Board may opt to deny the license if section 53.021(a) applies. *See id.* § 53.021(a).

You also ask whether, if we determine in response to the preceding question that the Board must revoke the registration, the Board may reinstate the registration "immediately after revocation." Request Letter, *supra* note 1, at 9.

You do not explain your use of the term "reinstate," *see id.*, and the Board's enabling statutes recognize only one circumstance in which a registration may be reinstated: When a person's certificate of registration has been expired for at least one year, the Board may revoke the registration. *See* TEX. OCC. CODE ANN. §§ 1051.353(e), 1052.203(e), 1053.203(c) (Vernon 2003); *see also Pub. Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001) (stating that a state agency has only those powers that are explicitly or implicitly delegated to it). If the former registrant applies to have the Board reinstate the registration, the Board may require the applicant to pass an examination and pay a fee. *See* TEX. OCC. CODE ANN. §§ 1051.351(e), 1052.203(e), 1053.203(c) (Vernon 2003).

Nevertheless, the Board may register an applicant whose registration was revoked under section 53.021(b) of the Occupations Code if the applicant fulfills the relevant statutory requirements. *See id.* §§ 1051.304-.305, 1052.153(a), 1052.154(a), 1053.152-.154 (providing applicant and examination requirements). If the applicant satisfies all application requirements by the time the Board takes formal action documenting the revocation, it may immediately register the applicant.

You ask whether the Board, in applying section 53.021(b) "to a conviction entered by a federal court or another state's court, should refer to the classification of the crime as determined by the jurisdiction that entered the conviction or should refer to the definitions of 'felony' under the Texas Penal Code to determine whether the conviction is . . . a 'felony' for purposes of [c]hapter 53." Request Letter, *supra* note 1, at 9.

Judicial opinions consistently have construed chapter 53 and other similar licensing statutes to include felony convictions in jurisdictions other than Texas. Most recently, the Austin court of appeals concluded that an individual convicted of the federal felony offenses of conspiracy to commit mail fraud and wire fraud had committed a felony for purposes of section 53.021. *See Locklear v. Tex. Dep't of Ins.*, 30 S.W.3d 595, 597-98 (Tex. App.–Austin 2000, no pet.). This case follows a long line of previous opinions construing licensing statutes applicable to physicians and attorneys to include as felonies convictions under the laws of the United States and other states. *See, e.g., Muniz v. State*, 575 S.W.2d 408, 413 (Tex. Civ. App.–Corpus Christi

1978, writ ref'd n.r.e.) (holding that term "felony involving moral turpitude" is not restricted to a felony under state law); *Francisco v. Bd. of Dental Exam'rs*, 149 S.W.2d 619, 622 (Tex. Civ. App.–Austin 1941, writ ref'd) (indicating that conviction in another jurisdiction may be a "felony involving moral turpitude" for purposes of dental licensing law); *Speer v. State*, 109 S.W.2d 1150, 1154 (Tex. Civ. App.–Galveston 1937, writ dism'd) (determining that a practitioner convicted of a felony under federal law may lose license to practice medicine). As the court said in *Speer v. State*, the "natural and reasonable construction" of the term "felony" in a licensing statute, where the statute is not expressly limited to a felony under Texas law, includes a felony conviction under the law of any other state or the United States. *Speer*, 109 S.W.2d at 1154; *cf.* Tex. Att'y Gen. Op. No. MW-457 (1982) at 1-4 (considering effect of California conviction for attempted robbery on application for Texas pawnshop license).

You ask finally "[w]hether the fact that a registrant was sentenced to incarceration in an institution other than a penitentiary, such as a halfway house, excludes that registrant from the class of persons who are subject to mandatory revocation" under section 53.021(b) of the Occupations Code. Request Letter, *supra* note 1, at 9. Under section 53.021(b), the Board must revoke a registrant's registration on the registrant's "imprisonment following a felony conviction." TEX. OCC. CODE ANN. § 53.021(b) (Vernon 2003). Accordingly, if "incarceration in an institution other than a penitentiary," as you put it, constitutes imprisonment, section 53.021(b) requires revocation.

In this regard, the statute is not clear on its face. Neither chapter 53 nor chapter 2001 of the Government Code, whose definitions are incorporated by reference, expressly defines the term "imprisonment." *See id.* § 53.001; TEX. GOV'T CODE ANN. § 2001.003 (Vernon 2000). Moreover, the term itself does not appear to recognize the many types of confinement, restraint, or supervision that may be used, including confinement in a penitentiary or a state jail, *see* TEX. PEN. CODE ANN. §§ 12.04, 12.31-.35 (Vernon 2003); placement in a community supervision program, *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 2(2) (Vernon Supp. 2003); placement in a halfway house, *see* TEX. GOV'T CODE ANN. § 508.118 or 508.119 (Vernon 1998 & Supp. 2003); or electronic monitoring, *see* TEX. GOV'T CODE ANN. § 508.221 (Vernon 1998). For these reasons, the statute is ambiguous and requires a review of outside sources.

Judicial definitions of the term "imprisonment" appear to be linked to the applicable statute and may not be dispositive here. For example, for purposes of a statute tolling the statute of limitations during imprisonment, a Texas court defined imprisonment in terms of confinement and restraint that would "'bear[] upon [an individual's] ability . . . to care for his affairs.'" *Carter v. Assoc. Transfer & Storage Co.*, 410 S.W.2d 830, 832-33 (Tex. Civ. App.–Waco 1966, no writ) (quoting 24 A.L.R.2d § 5). For purposes of calculating the term of imprisonment for which a defendant must be credited in a probation revocation action, another Texas court determined that time spent in a community-based court residential center did not constitute imprisonment. *See Staggs v. State,* 706 S.W.2d 822, 823 (Tex. App.–Fort Worth 1986, no writ). Referring to language in article 42.12, section 8(b) of the Code of Criminal Procedure, the court thought it "clear" that a defendant "was not entitled to credit for any time except that actually spent in jail during his probation." *Id.*

Furthermore, section 53.021(b)'s history does not suggest a definition. The statutory predecessor to section 53.021(b), construed in JM-482, did not refer to either imprisonment or incarceration. *See* Tex. Att'y Gen. Op. No. JM-482 (1986) at 3 (quoting article 6252-13c, section 4(e) of the Texas Revised Civil Statutes). Rather, the statute stated that, "[u]pon a licensee's conviction, felony probation revocation, revocation of parole, or revocation of mandatory supervision, his license shall be revoked." *Id.*; TEX. REV. CIV. STAT. ANN. art. 6252-13c, § 4(e), *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen. Laws 1431, 2439-40. The legislature added the term "imprisonment" during the Occupations Code's codification, which was intended to be nonsubstantive. *See* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 7, 1999 Tex. Gen. Laws 1431, 2440. Construing the pre-"imprisonment" statute, Attorney General Opinion JM-482 referred not to imprisonment but to "actual incarceration in the Department of Corrections or another penitentiary" or to "physical incarceration." Tex. Att'y Gen. Op. No. JM-482 (1986) at 7.

In the absence of a clearly applicable definition, we define the term by distinguishing between what section 53.021(b) terms "imprisonment" and community supervision, parole, and mandatory supervision. Because a license is revoked as a matter of law when a licensee's community supervision, parole, or mandatory supervision is revoked, presumably a license is not revoked as a matter of law so long as the licensee remains in such a program. Community supervision, parole, and mandatory supervision are not, therefore, imprisonment in the context of section 53.021(b).

We conclude that the term "imprisonment" in section 53.021(b) refers to confinement in a penitentiary or state jail facility, or the equivalent of either facility in another jurisdiction. The registration of a registrant who is confined in such a facility is revoked by operation of law. The Board is not required to revoke the registration of a registrant who was not imprisoned and who is on parole; is participating in a mandatory supervision program; or is participating in a community supervision program (which may include some form of confinement). None of these programs constitutes imprisonment for purposes of section 53.021(b).

A halfway house, about which you have specifically asked, is a facility to which low-risk inmates and certain other inmates may be "divert[ed] from housing in regular units" in a penitentiary to allow a "smoother transition from incarceration to supervised release." TEX. GOV'T CODE ANN. § 508.118(a) (Vernon 1998). Time spent in a halfway house is not confinement in a penitentiary or state jail facility (or equivalent facility in another jurisdiction), and it is not, therefore, imprisonment for purposes of section 53.021(b) of the Occupations Code. *Cf. generally United States v. Chavez*, 204 F.3d 1305, 1312-13 (11th Cir. 2000) (concluding that confinement to a halfway house does not constitute imprisonment); *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992) (concluding that time spent in halfway house was not term of imprisonment because, under federal statute, such time was term of probation); *Walt v. State*, 727 A.2d 836, 840 (Del. 1999) (concluding that a sentence to be served in a certain type of halfway house constitutes imprisonment for purposes of determining appellate jurisdiction under Delaware constitution, although defendant could leave house to work).

Attorney General Opinion JM-482 is overruled to the extent it conflicts with this opinion. *See generally* Tex. Att'y Gen. Op. No. JM-482 (1986).

## S U M M A R Y

The Texas Board of Architectural Examiners does not infringe upon an applicant's or a registrant's federal constitutional right to privacy or right under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution by requiring the applicant or registrant to report criminal convictions to the Board. Nor does the Board's requirement violate the Self-incrimination Clause of the Fifth Amendment to the United States Constitution.

Chapter 53 of the Occupations Code does not authorize the Board to take disciplinary action against a registrant or to disqualify an applicant for registration who refuses to provide information regarding the registrant's or applicant's criminal convictions. The Board may, however, take disciplinary action against the registrant or disqualify the applicant because he or she, by refusing to provide criminal history information, violates Board rules.

Section 53.021(b) revokes, by operation of law, the license of a felon who is imprisoned or whose community supervision, parole, or mandatory supervision is revoked. While the licensing authority has a duty to revoke the license, the fact that it does not do so does not affect the revocation. Thus, the registration of a Board registrant who was released from incarceration before the Board began revocation proceedings was revoked by operation of law, and the individual must apply to the Board to be registered again.

For purposes of section 53.021(b), a felony conviction includes an offense classified as a felony under the laws of the United States or another state.

The term "imprisonment" in section 53.021(b) refers to confinement in a penitentiary or state jail facility, or the equivalent of either facility in another jurisdiction. The Board must revoke the registration of a registrant who is confined in such a facility. On the other hand, the Board is not required to revoke the registration of a registrant who is on parole or who is participating in a mandatory supervision program or in a community supervision program (which may include confinement). Time spent in a halfway house is not confinement in a penitentiary or state jail facility (or equivalent facility in another jurisdiction) and is not imprisonment for purposes of section 53.021(b).

Attorney General Opinion JM-482 (1986) is overruled to the extent it conflicts with this opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee