786 A.2d 763

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Gary E. THOMPSON.

Misc. (Subtitle AG) No. 16, Sept. Term, 2000.

Court of Appeals of Maryland.

Dec. 17, 2001.

316

Melvin Hirshman, Bar Counsel and James P. Botluk, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland.

No argument on behalf of the Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, KARWACKI, ROBERT L. (Ret., specially assigned), JJ.

HARRELL, J.

Pursuant to Maryland Rule 16–709(a)[1], Bar Counsel, on behalf of the Attorney Grievance Commission (Petitioner) and at the direction of the Review Board, filed with this Court a petition for disciplinary action against Gary E. Thompson, Esquire (Respondent). In the petition, Bar Counsel alleged violations only[2] of Rules 8.4(b) and (c) of the Maryland Rules of Professional Conduct (MRPC)[3]. This Court referred the

---

1. The charges in this case were filed and processed below prior to 1 July 2001; thus, we refer to the attorney grievance procedural rules in effect at those times. The applicable rule, 16–709(a), states that "[c]harges against an attorney shall be filed by the Bar Counsel acting at direction of the Review Board."

2. In an apparent oversight, Bar Counsel inadvertently failed to charge Respondent with violating Rule 8.4(d), which provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Bar Counsel acknowledged this unfulfilled intent at oral argument before the Court.

3. Rules 8.4(b) and (c) provide:
 It is professional misconduct for a lawyer to:

matter to a judge of the Circuit Court for Montgomery County to conduct an evidentiary hearing and make findings of fact and conclusions of law in accordance with Maryland Rules 16–709(b)[4] and 16–711(a)[5]. After an evidentiary hearing, the hearing judge was unable to find by clear and convincing evidence that Respondent violated MRPC 8.4(b) or (c). Petitioner filed with this Court exceptions to the findings of fact and conclusions of law, and a recommendation for sanction. Respondent filed a brief reply to Petitioner's exceptions.

From the evidentiary record made below, the hearing judge made the following findings of fact:

Respondent is a 47–year old male who is married and has two sons. He was admitted to the Maryland bar in November 1978 and has practiced law exclusively in the state of Maryland for over 21 years. Respondent's law practice consists primarily of estates and trusts, business law and elder law. He also devotes a substantial amount of time to *pro bono* representation of the elderly.

On March 24, 1998, Bar Counsel filed a Complaint with Petitioner against Respondent based upon a charge brought against the Respondent on February 1, 1998 in the District Court of Maryland [sitting in] Montgomery County. On August 27, 1998, Respondent pled guilty to the offense of

---

. . .
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
. . . .

**4.** Rule 16–709(b) provides that the "Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall designate the judge or judges to hear the charges and the clerk responsible for maintaining the record in the proceeding."

**5.** Rule 16–711(a) mandates that "[a] written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

stalking, in violation of section 32–20 of the Montgomery County Code, which provides in pertinent part:

**Sec. 32–20 Stalking.** (a) In this section to stalk means to *engage in a persistent pattern of conduct which:*

(1) alarms, annoys, intimidates, frightens, or terrorizes a person; and

(2) causes the person to reasonably fear for his or her safety, or that of any third person.

. . .

Respondent was sentenced to six months incarceration with all time suspended, three years probation [1], one hundred hours of community service and a[n] $1,000.00 fine.

The stalking charge stemmed from Respondent's interactions with a 13–year old boy he met at a Montgomery County swim center in October 1997. Pursuant to one of their conversations approximately one month after their initial meeting, Respondent made an inappropriate sexual remark to the boy.[2] Subsequently, Respondent spoke to the boy at a shopping mall, called him on the telephone and on one occasion, appeared uninvited at the boy's home. Charges were then filed against Respondent. Respondent testified that it was only after being charged that he learned that the boy had been very upset as a result of Respondent's conduct with him.

Although Respondent has no previous sanctions for professional misconduct, his testimony revealed that he was previously acquitted of charges arising out of his conduct with another teenage boy in 1995. Respondent acknowledged that he has been sexually attracted to pubescent boys since he was in his late teens. After being charged with the stalking offense, Respondent sought treatment from Dr. Fred S. Berlin, M.D., Ph.D.[3], who diagnosed Respondent with

---

[1] To date, this Court has not been informed that Respondent has failed to comply with any of the terms and conditions of his probation.

[2] It is disputed as to whether the boy was in the shower at the time the remark was made.

[3] Dr. Berlin has extensive experience in treating sexual disorders. Among other accomplishments, he is the founder of The Johns Hopkins Sexual Disorders Clinic in Baltimore, Maryland.

nonexclusive homosexual Ephebophilia[4]. Since his evaluation by Dr. Berlin, Respondent has enrolled in a treatment program, which includes therapy sessions and antiandrogenic medication (which has the effect of lowering Respondent's sex drive). Progress letters from Dr. Berlin indicate that Respondent has been highly motivated and diligent in his efforts to maximize the effect of his treatment. Furthermore, Dr. Berlin reports that Respondent is doing well thus far. Dr. Berlin further indicates that Respondent's prognosis for continued abstinence from improper sexual behavior "will remain good" so long as he continues to maintain his high level of motivation and continues to adhere to his treatment regimen.

In August 1999, Respondent entered into a "Monitor's Contract" with Robert H. Metz, a prominent member of the Maryland Bar who agreed to monitor Respondent's activities as a practicing lawyer. Pursuant to the contract, Respondent agrees to limit his practice to estates and trusts, business law, elder law, real estate and other similar legal practice areas not involving issues pertaining to or involving contact with minor children. Mr. Metz agrees to act as Respondent's monitor conferring monthly with both Respondent and Dr. Berlin to confirm that Respondent is maintaining his treatment as well as adhering to all other protective stipulations in the contract.

[4] This condition involves a sexual attraction to pubescent boys. The condition does not limit the Respondent's sexual attraction only to pubescent boys and his testimony reveals that he also has a sexual attraction to his wife.

Based on these findings of fact, the hearing judge concluded that Respondent had *not* violated MRPC 8.4(b) or (c). Under

his interpretation of the requirements for a MRPC 8.4(b) violation, and relying in part on our decision in *Attorney Griev. Comm'n v. Post*, 350 Md. 85, 710 A.2d 935 (1998), the hearing judge concluded that Respondent's conduct did not "evince a character trait relevant or critical to the practice of law" and, therefore, did not "reflect[ ] adversely on his fitness as a lawyer." He also determined Respondent's conduct had not violated MRPC 8.4(c), as he found no evidence in the record suggesting Respondent "engaged in any conduct involving dishonesty, fraud, deceit or misrepresentation."

Petitioner filed with this Court exceptions challenging the hearing judge's conclusion that Respondent had not violated MRPC 8.4(b) [6,7], and recommended a sanction of indefinite suspension from the practice of law. Respondent, in proper person, filed a reply to Petitioner's exceptions arguing fundamentally that the hearing judge's findings of fact "should serve as the basis for consideration of this matter." Respondent did not appear at oral argument.

## I. *MRPC 8.4(b)*

**Maryland Rule of Professional Conduct 8.4(b)**—*Misconduct.*

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

The hearing judge, in his Conclusions of Law, opined that Respondent's misconduct in this case did not reflect "adversely on his fitness as a lawyer" and, therefore, did not violate MRPC 8.4(b). Petitioner excepts to this and maintains the hearing judge "erred" in concluding "Respondent's stalking of

---

**6.** Petitioner took no exceptions to the hearing judge's conclusion that Respondent had not violated MRPC 8.4(c). Accordingly, we do not consider this charge further.

**7.** We do not read Petitioner's exceptions as challenging the hearing judge's findings of fact, only his conclusions of law.

[a] teenage boy was not conduct adversely reflecting on his fitness as an attorney." Petitioner contends that "[w]here a lawyer's misconduct involves sexual misconduct with children, that misconduct reflects adversely on the lawyer's fitness." Respondent, in his Reply, urges us to adopt the reasoning of the hearing judge.[8]

It is well settled that this Court has original jurisdiction over all attorney disciplinary proceedings. *See Attorney Griev. Comm'n v. Zdravkovich,* 362 Md. 1, 20, 762 A.2d 950, 960 (2000) (citing *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999); *Attorney Griev. Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996)). The hearing judge's findings of fact, which are *"prima facie* correct," *Zdravkovich,* 362 Md. at 21, 762 A.2d at 960 (quoting *Glenn,* 341 Md. at 470, 671 A.2d at 474), are unexcepted to in this case, as we noted earlier. As to his conclusions of law, however, "our consideration is essentially *de novo," Attorney Griev. Comm'n v. Briscoe,* 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000), as "[t]he ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court." *Glenn,* 341 Md. at 470, 671 A.2d at 474 (citing *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 402–03, 593 A.2d 1087, 1091 (1991)). After thoroughly reviewing the record and discovered case law, we sustain Petitioner's exceptions and overrule the hearing judge's conclusion that Respondent's conviction of the crime of stalking, under section 32–20 of the Montgomery County Code, resulting from his actions involving a thirteen year old boy, does not reflect adversely on his trustworthiness and fitness as a lawyer in other respects.

The Comment to MRPC 8.4 provides that "[m]any kinds of illegal conduct reflect adversely on [the] fitness to practice

8. Respondent's Reply to Petitioner's Exceptions contains little in aid of our analysis. Other than characterizing the exceptions as a "mean spirited [and undignified] attack on someone who suffers from a recognized disease," and as containing "scattershot excerpts misinterpreting the ... record [and] a smorgasbord of cases which bear no factual resemblance to the [present] case," the Reply made no effort to analyze critically Petitioner's cited authorities or arguments.

law. . . ." As we explained in *Attorney Griev. Comm'n v. Post,* 350 Md. 85, 97, 710 A.2d 935, 941 (1998),

> Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence or demonstrate a character flaw that, were the person committing them applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. The rule identifies two such traits. In addition to those traits, however, it includes as a catchall object, "fitness as a lawyer in other respects." Since the Rule is specific in the requirement that the criminal act reflect adversely on the character traits or fitness as a lawyer, it follows that what the Rule contemplates is that the criminal act evidence another character trait, which, like honesty and trustworthiness, is relevant or critical to the practice of law.

The hearing judge, purportedly applying this explanation, reasoned that Respondent's misconduct was not a violation of MRPC 8.4(b), "at least so far as to the types of law which Respondent has practiced in the past and those which he has agreed to practice in the future." [9] We disagree.

 We acknowledge, as did the hearing judge, that Respondent's proffered areas of practice emphasis tend to minimize the potential for interactions with children directly as clients. Additionally, it must be conceded Respondent's misconduct did not involve or occur during the representation of a client. Under MRPC 8.4(b), however, an attorney's criminal misconduct need not involve the class of persons the attorney typically represents, nor occur within his or her practice of law, to be a violation of the rule. In fact, unlawful acts of violence, sex offenses, and drug and alcohol offenses,

---

9. In his conclusions of law, the hearing judge pointed-out that Respondent, in response to the charges, agreed to limit his practice to "estates and trusts, business law, elder law, real estate and other similar legal practice areas not involving issues pertaining to or involving contact with minor children."

wholly unrelated to an attorney's practice of law, have been recognized across the country as categories of criminal conduct violative of the provisions of the analogue to this or a similarly framed rule.[10] *See ABA/BNA Lawyer's Manual on Professional Conduct,* at 101:303–101:304 (citing, for example, *In re Kearns,* 991 P.2d 824 (Colo.1999) (censuring an attorney for conviction of vehicular assault and driving under the influence); *Florida v. Kandekore,* 766 So.2d 1004 (Fla.2000) (disbarring an attorney for assaulting law enforcement officer); *In re Conn,* 715 N.E.2d 379 (Ind.1999) (suspending an attorney for conviction of sexual exploitation of minors); *In re Sutton,* 265 Kan. 251, 959 P.2d 904 (1998) (censuring an attorney following criminal and civil charges for his disobeying a stop sign at construction site, confronting a construction worker, and throwing a soda bottle at him); *In re Robertson,* 256 Kan. 505, 886 P.2d 806 (1994) (censuring an attorney for his admitted possession of cocaine); *In re McEnaney,* 718 A.2d 920 (R.I.1998) (suspending an attorney following plea of *nolo contendre* to possession of cocaine and marijuana)). The crux of any MRPC 8.4(b) analysis is, as the language of the rule states, whether an attorney's criminal act "reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." It does not depend on whether the misconduct occurred while representing a client or, as the hearing judge suggested, whether the misconduct involved an individual from the class of persons the attorney typically represented. We are not suggesting that such factors may never be considered in a MRPC 8.4(b) analysis; indeed, there are many instances in which we may consider their existence

---

**10.** Although we have not experienced similar cases in Maryland under MRPC 8.4(b) in all of these categories, we have had cases in which we found misconduct wholly unrelated to the attorney's practice violative of MRPC 8.4(b). *See, e.g., Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 692 A.2d 465 (1997) (suspending an attorney indefinitely for conviction of driving under the influence and driving on a suspended license, and for his subsequent failure to report to a D.W.I. facility); *Attorney Griev. Comm'n v. Hamby,* 322 Md. 606, 589 A.2d 53 (1991) (suspending an attorney indefinitely for conviction of possession of cocaine and drug paraphernalia, resisting arrest, and assault and battery on a police officer).

or nonexistence to be important factors. In the present case, however, their nonexistence does not direct our decision.

According to the hearing judge's findings of fact and Respondent's testimony in this case, Respondent had a "number of conversations" with the victim (a thirteen year old boy) at a local swim center. In one of those conversations, Respondent made an inappropriate sexual remark to him regarding premature ejaculation. Respondent also spoke to the child at a shopping mall, called him on the telephone once or twice, and, ultimately, appeared uninvited at the child's home. This conduct led to his being charged with, and pleading guilty to, the offense of stalking. As he acknowledged in his testimony before the hearing judge, Respondent's actions caused the child to be "very frightened" and "very scared," feeling that Respondent "had pursued him inappropriately." In our opinion, these actions, considered together, do not resemble, by any standard, those of a responsible, mature, and trustworthy adult, and clearly violated the unquestioned limits of appropriate adult-child interaction.

It is well established in Maryland that children, by nature of their youth, require different levels of protection and care than most adults (excepting perhaps adults under disabilities). In many areas of the law, we have enumerated the inherent differences between children and adults which necessitate that protection. As we explained in *Stebbing v. State,* 299 Md. 331, 473 A.2d 903 (1984),

> ... youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults.

*Id.* at 368, 473 A.2d at 921 (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 115–16, 102 S.Ct. 869, 877, 71 L.Ed.2d 1, 11–12 (1982)) (citation and footnotes omitted). *See also Johns Hop-*

*kins Hosp. v. Pepper,* 346 Md. 679, 692, 697 A.2d 1358, 1364 (1997) (explaining that there is a "presumption that unequal bargaining power always exists between the two, with the power, and therefore the potential for overreaching, inuring to the adult."). The General Assembly, presumably in recognition of those differences, has enacted a number of statutes placing the responsibility on adults to protect and promote the welfare of children.[11] We too have acknowledged similarly the importance of protecting children.[12]

It naturally follows, considering the inherent vulnerability of children, that interaction between children and adults be viewed with close scrutiny. Because of the disparities of power, intellect, maturity, and judgment between the two, children are often without the resources and capabilities, both mentally and physically, to protect themselves from harm. The burden, therefore, is on the adult to act responsibly in his

---

**11.** These statutes range, for example, from Maryland's child abuse statute, codified at Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27, § 35C, which has "the goal of protecting 'children who have been the subject of abuse,' " *(Degren v. State,* 352 Md. 400, 419, 722 A.2d 887, 896 (1999) (quoting *State v. Fabritz,* 276 Md. 416, 423, 348 A.2d 275, 279 (1975))), to Maryland's Child Care/Foster Care subtitle, codified at Maryland Code (1974, 1998 Repl.Vol., 2000 Supp.), Family Law Article, §§ 5–501–5–593, designed to "protect minor children whose care has been relinquished to others ... [and] to resolve doubts in favor of the child where there is a conflict between the interests of a minor child and the interests of an adult ...." § 5–502(b). *See also* Maryland Code (1974, 1998 Repl.Vol., 2000 Supp.), Family Law Article, § 5–702 (explaining that the purpose of the Child Abuse and Neglect subtitle, codified at Maryland Code (1974, 1998 Repl.Vol., 2000 Supp.), Family Law Article, §§ 5–701–5–715, "is to protect children who have been the subject of abuse or neglect.").

**12.** For instance, regarding child custody, we noted,

[t]he controlling factor, or guiding principle, in both custody and adoption cases is not the natural parents' interest in raising the child, but rather what best serves the interest of the child; the paramount consideration is what will best promote the child's welfare, a consideration that is of 'transcendent importance.'

*In re Adoption/Guardianship No. 3598,* 347 Md. 295, 324, 701 A.2d 110, 124–25 (1997) (quoting *Petrini v. Petrini,* 336 Md. 453, 469–70, 648 A.2d 1016, 1023 (1994) (quoting *In re Adoption/Guardianship No. 10941,* 335 Md. 99, 113–14, 642 A.2d 201, 208–09 (1994))).

or her interactions with children to preserve their best interests, not to prey on their innocence. That implicit trust and duty is placed upon all adults, even those outside the home and school, including strangers coming into contact with a child in public. These are values we hold as a society, which are not novel to humanity generally.

As stated earlier, Respondent's behavior in pursuing the child/victim in this case grossly overstepped the boundaries of appropriate adult-child relationships. In so doing, Respondent demonstrated, and even acknowledged to himself, that he may not be trusted around children in general.[13,14] Although adult-child interactions are not related directly to Respondent's practice of law, the concept of trust is an inseparable element of any attorney's practice. It is inconceivable, therefore, how we presently may authorize and entrust Respondent with the enumerable confidential, fiduciary, and trust-based relationships that attorneys, by their profession, are required to maintain in their dealings with their clients or the public.

We acknowledge Respondent's diagnosis and apparent affirmative response to his treatment regimen, but do not find that determinative here.[15] Regardless of his present "high level of motivation" not to repeat the misconduct that led to the present charges, the fact remains that Respondent stalked a child, and that criminal act undermines our view of his present trustworthiness and fitness as a lawyer.

Many courts in other jurisdictions have found, as we do here, that sexually-motivated attorney misconduct involving

---

**13.** *See also infra* footnote 20 (discussing the precautions Respondent has taken to prevent his contact with children).

**14.** In his Reply to Petitioner's Exceptions, Respondent states his disease "is certainly frightening to the public and to [himself] (the father of two adolescent boys)."

**15.** Respondent's apparent and relatively short term success under the treatment regimen does not alter the outcome of this decision. Dr. Berlin's professional opinion was a conditional one—"so long as [Respondent] continues to remain fully compliant with treatment, ... his future prognosis should remain good."

children can be within the purview of the type of misconduct encompassed by MRPC 8.4(b) or its analogue.[16] Respondent suggested in his Reply to Petitioner's Exceptions that such cases involving the sexual exploitation of a minor "bear[ ] no factual resemblance" to his case involving mere stalking of a child. We do not agree.

Admittedly, the offense of stalking contemplates different behavior than the offenses committed against minors in the many MRPC 8.4(b)-type cases enumerated in note 16, *supra.* The purpose of stalking laws, however, such as the one implicated in this case, is to protect the general public and to prevent harm, such as molestation, from occurring to the stalking victim.[17] Therefore, in determining whether a crimi-

---

**16.** *See, e.g., In re Christie,* 574 A.2d 845 (Del.1990) (imposing a three year suspension for convictions of sexual harassment, indecent exposure, endangering the welfare of a child, and unlawfully dealing with a child); *In re Conn,* 715 N.E.2d 379 (Ind.1999) (imposing a two year suspension for conviction of exploitation of minor); *In re Buker,* 615 N.E.2d 436 (Ind.1993) (imposing a two year suspension for conviction of child molestation); *In re Kern,* 551 N.E.2d 454 (Ind.1990) (imposing a two year suspension for conviction of child molestation); *In re Fierro,* 254 Kan. 919, 869 P.2d 728 (1994) (imposing an indefinite suspension for conviction of attempted indecent liberties with a child); *In re Wilson,* 251 Kan. 252, 832 P.2d 347 (1992) (imposing an indefinite suspension for conviction of indecent liberties with a child); *State v. Foster,* 995 P.2d 1138 (Okla.2000) (imposing a public reprimand after plea of *nolo contendre* to charge of assault with intent to commit a felony); *In re Richardson,* 328 S.C. 161, 492 S.E.2d 788 (1997) (imposing indefinite suspension for conviction of assault and battery of a high and aggravated nature and indecent exposure).

In the past, we have found such misconduct involving children violative of different portions of the MRPC and earlier Disciplinary Rules. *See Attorney Griev. Comm'n v. Childress,* 364 Md. 48, 770 A.2d 685 (2001) (imposing an indefinite suspension for violating MRPC 8.4(d) by pursuing a child on the internet); *Attorney Griev. Comm'n v. Mitchell,* 308 Md. 653, 521 A.2d 746 (1987) (imposing an indefinite suspension for violating Disciplinary Rule 1–102(A)(3) by performing fellatio on a child).

**17.** Respondent was convicted of violating section 32–20 of the Montgomery County Code, which provides, in pertinent part:

(a) In this section to stalk means to engage in a persistent pattern of conduct which:
(1) alarms, annoys, intimidates, frightens, or terrorizes a person; and

nal act constitutes a MRPC 8.4(b) violation, it makes no difference that Respondent merely stalked a thirteen year old boy, without consummating an act of sexual abuse or other misdeed. Any such act violates the implicit trust the public and we expect from adults interacting with children. Respondent's failure to act-out even worse misconduct, under the circumstances, does not remove him from the scope of MRPC 8.4(b).[18]

## II. *Sanctions*

 Having concluded that Respondent violated MRPC 8.4(b), we must now address the issue of the proper sanction. When considering sanctions, it is well settled that

[t]he purpose of disciplinary proceedings against an attorney is to protect the public rather than to punish the erring attorney. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. The severity of the sanction depends upon the facts and circumstances of the case before this Court. Imposing a sanction protects the public interest because it demonstrates to members of the legal profession the type of conduct which will not be tolerated. *Zdravkovich*, 362 Md. at 31–2, 762 A.2d at 966 (citations omitted).

*See also Attorney Griev. Comm'n v. Mooney*, 359 Md. 56, 96, 753 A.2d 17, 38 (2000); *Attorney Griev. Comm'n v. Brown*, 353

---

(2) causes the person to reasonably fear for his or her safety, or that of any third person.

Section 32–20 was created by an "emergency act" for "the immediate protection of the public health and safety." 1993 Laws of Montgomery County, ch. 27, § 2. Its stated purpose was to "prohibit a person from engaging in certain threatening conduct toward another person." 1993 Laws of Montgomery County, ch. 27.

**18.** Although Respondent's relevant misconduct did not extend beyond stalking here, it is undisputed that his disorder involves a sexual attraction to pubescent boys, and "includes a driven or addictive like component." Respondent's Answer to Petition for Disciplinary Action, filed 21 August 2000, ¶ 8. In our mind, there is little question as to the motivation driving his conduct and the ultimate desired goal of that motivation.

Md. 271, 295, 725 A.2d 1069, 1080 (1999) (quoting *Attorney Griev. Comm'n v. Ober,* 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998)).

Bar Counsel recommends that Respondent be suspended indefinitely from the practice of law, that his reinstatement be conditioned upon his continuing to receive treatment and counseling for his disorder, and that, if reinstated, his law practice be monitored consistent with the conditions previously recommended by Petitioner and Respondent.[19] Respondent urges us to adopt the conclusions of law of the hearing judge, which would result in our imposing no sanction.

In determining an appropriate sanction under the Rules of Professional Conduct, we have considered the following factors:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Griev. Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (quoting *Glenn,* 341 Md. at 488–89, 671 A.2d at 483 (citations omitted)). *See also* Standard 9.0 of the ABA Standards for Imposing Lawyer Sanctions, *reprinted in ABA/BNA Lawyer's Manual on Professional Conduct,* at 01:838–01:840. The ABA Standards provide for the consider-

---

19. Prior to the petition being filed in the instant case, Bar Counsel and Respondent filed a joint petition with this Court requesting that we suspend Respondent from the practice of law indefinitely and that we contemporaneously reinstate him. The petition provided Respondent would have no contact with any minor children, other than his family members, would remain in therapy, would continue to take medication, and would maintain his Monitor's Contract. We denied that petition.

ation of the "vulnerability of victim" as an aggravating consideration. *Id.*

 There are both mitigating and aggravating factors in this case. In Respondent's favor, he apparently has maintained a cooperative attitude throughout the proceedings, displayed remorse for his actions, and has no prior disciplinary record. Additionally, he finally made an effort to seek treatment for his disorder and to limit his contact with children.[20] These considerations prevented disbarment. In aggravation, Respondent's victim, due to his age alone, was vulnerable to harm. As we noted earlier, childhood "is a time and condition of life when a person may be most susceptible to influence and to psychological damage." *Stebbing,* 299 Md. at 368, 473 A.2d at 921 (citation omitted).

After careful consideration of all of these factors, we conclude that indefinite suspension is the appropriate sanction. Even though Respondent has sought treatment for his disorder and has made efforts toward prevention of similar misconduct in the future, his misconduct in this case erodes our present level of confidence in his trustworthiness and fitness to be a lawyer.[21] We do not reject the possibility that, at some

---

**20.** As noted in the hearing judge's findings of fact, Respondent is currently being treated by Dr. Fred S. Berlin, M.D., Ph.D., at The Johns Hopkins Sexual Disorders Clinic in Baltimore, Maryland. Additionally, Respondent testified that he has taken "quite a few steps" to limit his contact with young males. Specifically, Respondent explained,

> I do not coach. I don't counsel. I don't have any contact with the youth organizations, other than to take my son over to those programs and pick him up afterwards.
> I also make a special effort not to be in the house or any kind of building with young people unless my wife is there or there's another adult present.
> I also—I don't go to the Rockville Swim Center at all. I try to avoid all those kinds of situations.
> And the other thing we do is we have told basically all of our neighbors and our close friends about my condition and made sure that they understand it's important for them to protect their sons and to take appropriate steps that they feel is necessary.

**21.** Respondent, presumably in an attempt to provide reassurance to this Court that similar misconduct will not occur again, entered into a "Monitor's Contract" with a member of the Maryland Bar prior to his

point in the future, Respondent may be able to demonstrate to us a track record sufficient to restore a level of trustworthiness and fitness to practice law, but, until that is shown to the Court's satisfaction, an indefinite suspension to commence thirty days from the date of the filing of this opinion is required to protect the public interest.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GARY E. THOMPSON.**

BELL, C.J., RAKER, and CATHELL, JJ., dissent.

BELL, C.J., Dissenting.

The respondent, Gary E. Thompson, was convicted, on a plea of guilty, of violating § 32–20 of the Montgomery County Code, which proscribes stalking,[1] as a result of interactions he

---

evidentiary hearing. That agreement provides for the monitoring of Respondent's activities, including his practice and treatment, and mandates that the Maryland Attorney Grievance Commission is a "specifically intended third-party beneficiary" of the agreement. It also includes a promise by Respondent to limit his law practice to "estates and trusts, business law, elder law, real estate and other similar matters not in any way involving issues pertaining to, or contact with, minor children." Although we recognize the agreement as evidence of Respondent's good intentions, its existence is not a sufficient mitigating factor in our consideration of the appropriate sanction at this time. We do not have a present mechanism to enforce a restriction on an attorney's areas of practice, whether volunteered or otherwise, and Respondent's and the Monitor's promises alone do not restore the confidence eroded by the misconduct.

1. Section 32–20 of the Montgomery County Code, as pertinent, provides:
 "*Sec. 32–20 Stalking.* (a) In this section to stalk means to engage in a persistent pattern of conduct which:
 "(1) alarms, annoys, intimidates, frightens, or terrorizes a person; and
 "(2) causes the person to reasonably fear for his or her safety, or that of any third person."

had with a 13–year old boy, as described by the hearing court and reported in the majority opinion. 367 Md. 317, 786 A.2d 765 (2001). He was sentenced to a six month suspended sentence, three years probation, one hundred hours of community service and a $1,000.00 fine. The respondent's conduct was not related to his law practice, neither involving a client, nor directly implicating honesty, trustworthiness, truthfulness and reliability, traits closely associated with the legal profession, *see* ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) 5.11 [2] (ABA Standards), or his technical competence to practice law.

Rather than charge the respondent with a violation of Maryland Rule of Professional Conduct 8.4(d),[3] which prohibits engaging "in conduct that is prejudicial to the administration of justice," Bar Counsel charged him with violation of only Rule 8.4(b) and (c). The hearing court having concluded that the respondent did not violate either subsection charged, the petitioner excepted only to the finding as to subsection (b). The majority sustains that exception, 367 Md. at 322, 786 A.2d at 767–68, concluding that the respondent's conduct fell within the proscription of that subsection.

The issue that this case requires this Court to resolve is whether a lawyer's conviction of the subject Montgomery County Code provision, specifically when it involves a teen-aged boy, establishes a violation of Rule 8.4(b). Resolution of

---

**2.** Standard 5.11 provides:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

**3.** At oral argument, the petitioner informed the Court that the omission was inadvertent, rather than deliberate.

the issue involves the interpretation of the applicable Rule and, in particular, the phrase, "fitness as a lawyer in other respects."

It is well settled that interpretation of a rule of procedure is governed by the same rules and canons as are applicable to the construction of a statute. *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224–25 (2001); *Johnson v. State,* 360 Md. 250, 264, 757 A.2d 796, 804 (2000); *Lerman v. Heeman,* 347 Md. 439, 443, 701 A.2d 426, 428 (1997); *New Jersey v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993); *Beales v. State,* 329 Md. 263, 271, 619 A.2d 105, 109 (1993). In addition to seeking to ascertain the intent of the promulgating authority in adopting the rule, we consider the rule in context and construe it so that no word, phrase, clause or sentence is rendered surplusage or nugatory. *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000). Moreover, "[w]e are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used." *Strazzella,* 331 Md. at 274–75, 627 A.2d at 1057. Nor are we to construe the rule with " 'forced or subtle interpretations' that limit or extend its application." *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993) (quoting *Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)).

Rule 8.4 of the Maryland Rules of Professional Conduct has six subsections. In its entirety, it provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through acts of another;

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice."

"(e) state or imply an ability to influence improperly a government agency or official; or

"(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."

Subsections (a), (e) and (f) clearly are inapplicable to this case. While subsection (b) is the only one before the Court for interpretation, the petitioner not having excepted to the hearing court's conclusion that subsection (c) does not apply, the meaning of subsection (d) nevertheless is relevant to the meaning, and scope, of subsection (b) because an interpretation of subsection (b) may not render subsection (d) meaningless. This Court has considered the meaning and effect of both. *See, e.g., Attorney Grievance Com'n of Maryland v. Post,* 350 Md. 85, 710 A.2d 935 (1998) (as to Rule 8.4(b)); *see also Attorney Grievance Com'n of Maryland v. Painter,* 356 Md. 293, 739 A.2d 24 (1999) (as to Rule 8.4(d)).

In *Post,* the respondent was alleged to have violated Rule 8.4(b) [4] by failing to file withholding income tax returns timely, to remit the taxes withheld, and to hold the withheld taxes in trust. The hearing court so concluded. 350 Md. at 88–89, 710 A.2d at 936. Despite acknowledging, and, indeed, finding, that the defaults were not related to, and did not adversely reflect on, the respondent's honesty or trustworthiness, but rather only on the respondent's "endeavors to operate his office in a business-like manner," 350 Md. at 94, 710 A.2d at 939, the court concluded that the respondent's conduct adversely reflected on his fitness as an attorney, reasoning:

"One of the most fundamental of a lawyer's functions is to give sound legal counsel to his or her clients, meaning that he or she must, when called upon to do so, advise the clients of their various lawful rights and duties, and concomitantly

---

4. The hearing court also found that the respondent had violated Rule 8.4(d). The respondent did not except to that finding. Indeed, he agreed with it. *Post,* 350 Md. at 92, 710 A.2d at 938.

is bound to urge them to comply with those legal duties. An attorney, almost without regard to his reasons therefor, who does not 'practice' what he or she is required to 'preach' surely diminishes the stature and fitness of his role as a provider of legal counsel. Therefore, notwithstanding a degree of sympathy which Respondent's quandary may create, it cannot be doubted that his conduct reflected adversely on his fitness as a lawyer and, consequently, that he is in violation of Rule 8.4(b)."

350 Md. at 94, 710 A.2d at 939.

Addressing the issue, we construed Rule 8.4(b), giving meaning to the phrase, "fitness to practice law in other respects," as follows:

"Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence or demonstrate a character flaw that, were the person committing them applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. The rule identifies two such traits. In addition to those traits, however, it includes as a catchall object, 'fitness as a lawyer in other respects.' Since the Rule is specific in the requirement that the criminal act reflect adversely on the character traits or fitness as a lawyer, it follows that what the Rule contemplates is that the criminal act evidence another character trait, which, like honesty and trustworthiness, is relevant or critical to the practice of law."

350 Md. at 97, 710 A.2d at 940-41. In so doing, we accepted the argument of the respondent in that case that, "as used in the Rule, 'fitness' connote[d] 'something intrinsic to [his] conduct that implicate[d] his legal abilities,'" that "that [wa]s the only appropriate construction of the term when one considers that the conduct on which the court relied fits quite comfortably within the reach of Rule 8.4(d)," and that, for the rule to be applicable, there must be a connection between the conduct

and the respondent's fitness as a lawyer in the subject case. *Id.* at 96, 710 A.2d at 940.

We rejected the hearing court's conclusion that the respondent had violated Rule 8.4(b). Significantly, in so doing, we opined:

"The only basis for the court's conclusion that it does reflect adversely on his fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the administration of justice may be prejudiced. The court was specific in rejecting any suggestion that, by his actions, the respondent's honesty or trustworthiness was compromised, the conclusion that one could most logically be expected to draw. Moreover, the court also diagnosed the problem as one involving the respondent's office management skills rather than 'his performance or abilities as an attorney.'"

350 Md. at 99, 710 A.2d at 942.

In *Painter,* the respondent was charged with violating Rule 8.4(b) and (d) by committing criminal acts of assault and battery, transporting a handgun, as well as committing acts of domestic violence against his wife and children. 356 Md. at 300, 302, 739 A.2d at 28, 29. The hearing court found by clear and convincing evidence that he had committed the acts charged. *Id.* at 296, 739 A.2d at 26. Neither party took exceptions to the court's findings of fact or conclusions of law. Thus, the only issue before this Court was the appropriate sanction to be imposed. *Id.* at 306, 739 A.2d at 29. Nevertheless, we commented on what a violation of both Rule 8.4(b) and Rule 8.4(d) required, noting as to the former what we said in *Post.* 356 Md. at 306–07, 739 A.2d at 31. As to the latter, we said:

" " 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence."

*Rheb v. Bar Ass'n of Baltimore City,* 186 Md. 200, 205, 46 A.2d 289, 291 (1946). We have recognized, in that regard, " "that conduct that impacts on the image or the perception of the courts or the legal profession, *see Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 536, 565 A.2d 660, 666 (1989) and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice. Lawyers are officers of the court and their conduct must be assessed in that light." "

*Attorney Grievance Comm'n v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998). *See Iowa Supreme Court Board of Professional Ethics and Conduct v. Polson,* 569 N.W.2d 612, 613–14 (Iowa 1997). In that case, the Court held that an attorney's convictions of contempt, because it defied the court's orders, prejudiced the administration of justice and reflected adversely on his fitness to practice law."

*Id.* at 306–07, 739 A.2d at 31.

The Court concluded that

"under the circumstances, an attorney, an officer of the court, who has committed acts of violence, to some of which he pled guilty, on both his wife and children, contrary to the policy of this State, which abhors such acts, and violated court ordered probation, at the very least, 'engage[s] in conduct that is prejudicial to the administration of justice.' "

*Id.* at 307, 739 A.2d at 32. We cautioned, however,

"it is not all that clear that the criminal conduct in which the respondent engaged and to which he has pled guilty impacts his fitness to practice law. Thus, while

'Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court,'

*Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 398, 692 A.2d 465, 472 (1997), quoting, with approval, *In re Kelley,* 52 Cal.3d 487, 276 Cal.Rptr. 375, 380, 801 P.2d 1126, 1131

(Cal.1990), not all violations of the law indicate a lack of fitness to practice law. As we pointed out in *Attorney Griev. Comm'n v. Post*, 350 Md. 85–99, 710 A.2d 935, 941 (1998), if the only basis for the court's conclusion that a particular violation of the law reflects adversely on an attorney's fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel, that is simply another way of saying that the administration of justice may be prejudiced."

*Id.* at 307 n. 7, 739 A.2d at 32 n. 7.

To be sure, there are cases in which this Court has sustained hearing court findings and conclusions that conduct of an attorney wholly unrelated to his or practice violated Rule 8.4(b). *See, e.g., Attorney Griev. Comm'n v. Black*, 362 Md. 574, 766 A.2d 119 (2001); *Attorney Griev. Comm'n v. Gilbert*, 356 Md. 249, 739 A.2d 1 (1999); *Attorney Griev. Comm'n v. Garland*, 345 Md. 383, 692 A.2d 465 (1997) (driving under the influence and driving on a suspended license convictions and subsequent failure to report to a D.W.I. facility); *Attorney Griev. Comm'n v. Hamby*, 322 Md. 606, 589 A.2d 53 (1991) (convictions for possession of cocaine and drug paraphernalia, resisting arrest, and assault and battery on a police officer).[5]

However, in none of these cases did the respondent in the case take exception to the conclusion that Rule 8.4(b) was applicable and, therefore, in none of them was there any analysis as to why, or how, the conduct reflected adversely on

---

**5.** These cases are to be contrasted with those involving an attorney's failure to timely file employee withholding tax returns, to remit the taxes withheld, and to hold the withheld taxes in trust, which cases, depending on the findings, may indeed reflect on the attorney's fitness to practice law because the omission may reflect on the attorney's honesty and trustworthiness. *See Attorney Griev. Comm'n v. Atkinson*, 357 Md. 646, 745 A.2d 1086 (2000); *Attorney Griev. Comm'n v. Walman*, 280 Md. 453, 374 A.2d 354 (1977). In *Walman*, the respondent had been convicted of "willful failure to file income tax returns." *Id.* at 463, 374 A.2d at 360. The Court stated that, "the crime of which respondent stands convicted represents conduct prejudicial to the administration of justice and, *under the particular circumstances of this case,* reflects upon his fitness to practice law is beyond debate." (Emphasis added)

the attorney's fitness. In *Gilbert* and *Black,* as in *Painter,* the respondent had been charged, and found to have violated, both Rule 8.4(b) and (d). Although we acknowledged that most courts sanctioning attorneys for the possession or use of drugs do so because of that conduct's adverse reflection on the attorney's fitness to practice, we felt no need to address the issue, particularly pointing out in *Gilbert* that, "[o]f course, to the extent that conduct of a lawyer adversely affects that lawyer's fitness to practice law, it necessarily prejudices the administration of justice." 356 Md. at 253, 739 A.2d at 3.

Not only was there no exception taken in *Garland* to the finding or conclusion that Rule 8.4(b) was violated, but the hearing court's findings revealed a much greater concern than just the conviction in the case. Those findings were as follows:

"The evidence presented at the Respondent's trial is both clear and convincing that on August 26, 1992 he operated a motor vehicle at night, erratically, while under the influence of alcohol. This was at least the Respondent's third alcohol related driving offense. The Respondent violated Judge Rushworth's probation by failing and refusing to enter into alcohol counseling, either through the D.W.I. facility or under the supervision of Mr. Vincent. Not only were the Respondent's actions criminal, but they likewise demonstrated conduct prejudicial to the administration of justice. In a situation where an attorney refuses to obey the lawful order of a court, it shows obvious contempt for the very same court of which the Respondent is an officer.

"The Respondent's contention that he did not receive the judge's order timely is totally void of any merit. The judge recited in open court at the time of sentencing his concerns about the Respondent's need for treatment for alcoholism. The judge directed the Respondent to report to the D.W.I. Facility in Prince George's County no later than 5:00 p.m. on October 8, 1993. Further, to ensure that the Respondent would comply with the Court's Order, the sentencing judge set an appeal bond of $25,000.00 with the direction that he wanted to keep the Respondent off the street,

describing the Respondent as a 'loose cannon.' Instead of complying with the Court's Order, the Respondent flagrantly ignored the Order. Instead of reporting to the D.W.I. facility on October 8, 1993 or seeking counseling from the director of Lawyer Counseling for the Maryland State Bar, the Respondent went about his normal pursuits of practicing law in Baltimore County on the date he was required to seek treatment. His conduct was clearly prejudicial to the administration of justice and in violation of the Rules of Professional Conduct."

345 Md. at 389–90, 692 A.2d at 469.

In *Hamby,* curiously, the only exception taken by the respondent attorney was to his being charged with a Rule 8.4(d) violation. The attorney misconduct involving children that we have considered that comes closest, factually, to the misconduct in this case occurred in *Attorney Griev. Comm'n v. Childress,* 364 Md. 48, 770 A.2d 685 (2001). There, where the conduct involved pursuing a child on the internet, the respondent was only charged with a violation of Rule 8.4(d). Having sustained the violation, we imposed an indefinite suspension. In *Attorney Griev. Comm'n v. Mitchell,* 308 Md. 653, 521 A.2d 746 (1987), the charged violations, which were sustained, were of DR 1–102(A)(1) and (3), proscribing the violation of a Disciplinary Rule and engaging in illegal conduct involving moral turpitude. The inappropriate conduct was performing fellatio on a thirteen year old boy. DR 1–102(A)(6) that prohibited engaging in conduct that reflects adversely on fitness to practice law was not charged.

In determining that the respondent's conviction of stalking constituted evidence that he violated Rule 8.4(b), the majority rejects the notion that whether there has been a violation depends on the action occurring during an attorney client relationship or involved a member of the class of clients the attorney usually represented. Noting the inherent vulnerability of children, requiring their interaction with adults to be viewed with close scrutiny, it states the rationale for its position and holding:

"Respondent's behavior in pursuing the child/victim in this case grossly overstepped the boundaries of appropriate adult-child relationships. In so doing, Respondent demonstrated, and even acknowledged to himself, that he may not be trusted around children in general.... Although adult-child interactions are not related directly to Respondent's practice of law, the concept of trust is an inseparable element of any attorney's practice. It is inconceivable, therefore, how we presently may authorize and entrust Respondent with the enumerable confidential, fiduciary, and trust-based relationships that attorneys, by their profession, are required to maintain in their dealings with their clients or the public." (Footnotes omitted)

367 Md. at 327, 786 A.2d at 770–71.

The majority relies on the Comment to Rule 8.4, which states that "[m]any kinds of illegal conduct reflect adversely on [the] fitness to practice law ...," [6] the attitude in Maryland concerning the protection of children, 367 Md. at 325–26, 786 A.2d at 769–70, and cases from other States, *e.g.*, *In re Christie,* 574 A.2d 845 (Del.1990); *In re Conn,* 715 N.E.2d 379 (Ind.1999); *In re Buker,* 615 N.E.2d 436 (Ind.1993); *In re Kern,* 551 N.E.2d 454 (Ind.1990); *In re Fierro,* 254 Kan. 919, 869 P.2d 728 (1994); *In re Wilson,* 251 Kan. 252, 832 P.2d 347 (1992); *State v. Foster,* 995 P.2d 1138 (Okla.2000); *In re Richardson,* 328 S.C. 161, 492 S.E.2d 788 (1997), interpreting their version of Rule 8.4(b) as including the kind of conduct in which the respondent engaged in this case.

I agree with the majority that violation of Rule 8.4(b) "does not depend on whether the misconduct occurred while representing a client or, as the hearing judge suggested, whether the misconduct involved an individual from the class of persons the attorney typically represented." 367 Md. at 324, 786 A.2d at 769. I do not agree with its construction of Rule 8.4(b),

---

**6.** The rest of the sentence is, ", such as offenses involving fraud and the offense of willful failure to file an income tax return." Read in its entirety, the Comment supports the *Post* interpretation of Rule 8.4(b).

however. Such a construction renders Rule 8.4(d) surplusage and nugatory.

Trust, to be sure, is a critical part of the stock and trade of a lawyer. A client must be able, to be sure, to trust his or her lawyer, and, in particular, his or her competence, discretion and advocacy—his or her willingness and ability to do so—on his or her behalf. It is the lawyer and his or her technical competence that must be trusted and that extends to the entire universe of those who would seek, and use, his or her services. When, for reasons unrelated to his or her technical competence, or even his or her profession, a lawyer, an officer of the court, cannot be trusted with a segment of that universe, of the population, his or her conduct reflective of the reason that he or she cannot be trusted with that segment of the population, because it impacts adversely on the public's image of the courts and the legal profession, may be, and usually will be, prejudicial to the administration of justice. That is the case here.

We have held that it is not necessary that there be a criminal conviction to establish a violation of Rule 8.4(b), *see Garland,* 345 Md. at 390, 692 A.2d at 468–69; *Attorney Griev. Comm'n v. Deutsch,* 294 Md. 353, 450 A.2d 1265 (1982), simply proof of the conduct. *Attorney Griev. Comm'n v. Proctor,* 309 Md. 412, 524 A.2d 773 (1987). If all that is required to establish a violation of Rule 8.4(b), to demonstrate that conduct reflects adversely on a lawyer's fitness to practice, is proof of aberrant behavior and a post hoc rationalization for why that conduct may reflect adversely on fitness, without tying the trait the conduct is indicative of to one that, like honesty and trustworthiness, is critical to the lawyer function, then there is no role for 8.4(d) to play; it has absolutely no independent basis for existence. That is what has occurred here: Rule 8.4(d) is rendered nugatory by the majority's interpretation. Moreover, the majority's is a strained construction that is reminiscent of the interpretation and rationalization this Court rejected in *Post.*

The cases on which the majority places heavy reliance are not helpful and, in fact, are inapposite.[7] In none of the cases was an exception taken to the finding and conclusion that the respondent in that case violated Rule 8.4(b) or that State's equivalent. For that reason, not unlike the majority's criticism of the Respondent's Reply to Petitioner's Exceptions, in none of the cases was there any "effort to analyze critically," 367 Md. at 322, 786 A.2d at 767, the rules's scheme or why the particular conviction adversely reflected on the lawyer's fitness to practice law. I do not find any of the cases persuasive.

The hearing judge was eminently and patently correct. I would overrule the exceptions of Bar Counsel. That the conduct clearly prejudices the administration of justice, which, unfortunately and inadvertently, was not charged, and is serious cannot, and does not, in my view, justify the interpretation the majority gives Rule 8.4(b). But that is the only basis I can discern for it.

RAKER, J., dissenting:

The Court imposes an indefinite suspension in this case. I respectfully dissent from the sanction imposed by the Court because I believe respondent, Gary Thompson, should be disbarred.

Gary Thompson was convicted of the criminal offense of stalking a thirteen-year-old boy whom he met at a Montgomery County swim center. He made an inappropriate sexual remark to the young boy and then called him on the telephone and appeared uninvited at the boy's home.

Respondent pled guilty to stalking and was sentenced to a term of incarceration of six months, all suspended, three years probation, one hundred hours of community service and a fine

---

7. In *In the Matter of Gene E. Conn*, 715 N.E.2d 379 (Ind.1999), the case was submitted on a Conditional Agreement for Discipline, as was *In the Matter of Jan R. Buker*, 615 N.E.2d 436 (Ind.1993). Moreover, in *Conn*, there was an element of concealment of information relevant to the issue of the respondent's admission to the bar.

of $1,000.00. Respondent has been diagnosed with "nonexclusive homosexual Ephebophilia."[1] He acknowledged that he has been sexually attracted to pubescent boys since he was in his late teens.

I am mindful that respondent has been punished under the criminal laws of Maryland for his criminal misconduct. Disciplinary sanctions, in contrast, are intended not to be punitive but to protect the public and maintain the integrity of the legal system, as well as the confidence of the public in the system. In light of these purposes, it is important to observe that respondent concedes that he poses a threat to the community, as evidenced by his explanation that he has "told basically all of our neighbors and our close friends about my condition and made sure that they understand *it's important for them to protect their sons and to take appropriate steps that they feel is necessary.*" I do not believe that respondent's seeking treatment from Dr. Berlin is a mitigating circumstance that justifies the lesser sanction of indefinite suspension. Likewise, respondent's cooperative attitude during the proceedings, display of remorse, and lack of a prior disciplinary record are not sufficient mitigating circumstances to avoid disbarment.

In order to protect the public and maintain the integrity of the legal system, respondent should be disbarred. While his conduct was not connected with the practice of law, he has

---

1. Ephebophilia has been described as a sexual preference by adult men for the young male person, that is, the young person shortly after puberty. *See United States v. Black,* 116 F.3d 198 (7th Cir.1997) ("sexually attracted to young men"); Lisa M. Smith, *Lifting the Veil of Secrecy,* 18 LAW & PSYCHOL. REV. 409 (1994) ("people who sexually fixate on [male] adolescents"). Ephebophilia fits under a larger category of disorders known as Paraphilias, the essential features of which are "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself of one's partner, or 3) children or other nonconsenting persons, that occur over a period of at least six months...." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 522–23 (4th ed.1994). Paraphilias are, by definition, recurrent. *Id.* at 524. "The disorders tend to be chronic and lifelong...." *Id.*

been convicted of a serious crime, and this Court has found that he is unfit to practice law. Our observation in *Attorney Grievance Comm'n v. Protokowicz*, 329 Md. 252, 619 A.2d 100 (1993), is equally fitting in this case: "This is outrageous behavior, a world apart from what this Court, the profession, and the public is entitled to expect from members of the bar." *Id.* at 261–62, 619 A.2d at 104.

In not disbarring respondent and imposing an indefinite suspension, the majority says that "[w]e do not reject the possibility that, at some point in the future, respondent may be able to demonstrate to us a track record sufficient to restore a level of trustworthiness and fitness to practice law...." 367 Md. at 331–32, 786 A.2d 773–74. It seems to me highly unlikely that respondent can demonstrate a sufficient "track record" to convince this Court that he is fit to practice law in the near future. Since there is no such thing as permanent disbarment in this State,[2] *but see Fellner v. Bar Ass'n of Balt. City*, 213 Md. 243, 247, 131 A.2d 729, 732 (1957) (ordering that respondent be permanently disbarred), respondent should be disbarred, with the heavy burden upon him to demonstrate that he is fit to practice.

Other jurisdictions also view sexual offenses against children as most serious. For example, in *In re Kern*, 551 N.E.2d 454 (Ind.1990), the Supreme Court of Indiana said that "[t]he offense of child molesting, however, is not only a serious crime abhorred by our society and strictly proscribed by our criminal laws, but, by its very nature, it renders the perpetrator unfit to be an officer of the Court and warrants the strictest sanction." *Id.* at 456–57.

CATHELL, J., Dissenting.

I concur with the findings of the majority. I disagree, however, with the sanction. In *Attorney Grievance Commis-*

---

**2.** Unlike Maryland, many States permanently disbar attorneys for certain misconduct. *See, e.g.*, Arkansas, Kentucky, Florida, Ohio, Arizona, Washington, South Dakota, Oregon, California, New Jersey, Mississippi, Michigan, Missouri, South Carolina.

*sion v. Childress,* 364 Md. 48, 74–75, 770 A.2d 685, 701 (2001), writing in dissent, I stated:

> In my view of the present world we live in, sexual predators who are permitted to remain as attorneys potentially are more damaging to the image of the profession and more dangerous to the public, than most of those we have disbarred, and all of those on whom we have imposed lesser sanctions. This case involves an adult's repeated attempts to engage in improper and sometimes illegal and criminal sexual activity with children. Now is the time to say that there are certain sexual practices *involving children* that will forever bar a person from membership in the heretofore honorable profession of law. [Footnotes omitted.]

I have not changed my views. For the reasons stated in my dissent in *Childress,* I would disbar the respondent.