WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
William Kevin Goode ("Respondent") was convicted of twenty-eight felony counts of cruelty to animals, based on the pain and suffering he inflicted on twenty dogs and eight cats in his care. He never reported his conviction to disciplinary authorities and declined to participate in this proceeding. Respondent's misconduct warrants a suspension of two years.
I. PROCEDURAL HISTORY
On August 16, 2017, Sara C. Van Deusen, Office of Attorney Regulation Counsel ("the People"), filed a complaint with the Presiding Disciplinary Judge ("the Court"). The same day, the People sent copies of the complaint to Respondent via certified and regular mail at his registered business address and his last-known addresses. Respondent failed to answer, and the Court granted the People's motion for default on October 27, 2017. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and *408 all rule violations established by clear and convincing evidence.[1]
On March 6, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Van Deusen represented the People. Respondent did not appear. The People represented that Respondent had left them voicemails the night before and the morning of the hearing in which he stated that he did not wish to participate.[2] At the sanctions hearing, the People's exhibits 1-3 were admitted into evidence.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
Respondent took the oath of admission and was admitted to practice law in Colorado on November 22, 2005, under attorney registration number 37063. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[3]
On November 25, 2014, Respondent was charged with twenty-eight separate misdemeanor counts of cruelty to animals under C.R.S. section 18-9-202(1)(a) as well as twenty-nine separate felony counts of cruelty to animals under C.R.S. section 18-9-202(1.5)(b). Each of these fifty-seven counts relates to a dog or a cat that prosecutors alleged was in the care of Respondent.
From July 14, 2014, through January 7, 2015, Respondent was represented by the public defender. During a hearing held on January 7, 2015, Respondent testified that he had been practicing criminal defense law for thirty-two years. The court granted Respondent's leave to proceed pro se, concluding that his waiver of his right to counsel was knowing, intelligent, and voluntary.
A two-day jury trial took place on March 16 and 17, 2015. Respondent was found guilty on all fifty-seven counts. On May 13, 2015, Respondent was sentenced to eighteen months in the custody of the Department of Corrections ("DOC") on count 29, as well as an additional twelve months in the custody of the DOC on counts 30-57, to run consecutively to the sentence for count 29. Respondent was sentenced to six months in DOC's custody for each of the misdemeanor counts, to run concurrently with the sentence for count 29. He was also sentenced to one year of mandatory parole.
Under C.R.C.P. 251.20(b), Respondent was required to report his conviction to the People no later than March 31, 2015. But he failed to report the conviction at all: the People learned of Respondent's conviction independently in late 2016.
Respondent was released from the DOC and placed on parole in early 2017. On March 9, 2017, the court of appeals vacated Respondent's convictions on criminal counts 28 and 57; all other convictions were affirmed.
On July 13, 2017, Respondent was immediately suspended from the practice of law under C.R.C.P. 251.8(a).
Through his misconduct, Respondent violated Colo. RPC 3.4(c), which forbids a lawyer from knowingly disobeying an obligation under the rules of a tribunal-here, his duty to report his conviction. He also violated Colo. RPC 8.4(b), which states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, and C.R.C.P. 251.5(b), which provides that any criminal act reflecting adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects is grounds for discipline.
SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[4] and Colorado Supreme Court case law guide the imposition of sanctions for *409 lawyer misconduct.[5] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : Lawyers are expected to uphold the law in their professional and personal conduct. By committing multiple criminal acts, Respondent violated a duty he owes to the public to maintain standards of integrity. He also violated his professional duty to the legal system by failing to report his criminal conviction to the People.
Mental State : The order of default establishes that Respondent knowingly failed to report his criminal conviction in contravention of Colo. RPC 3.4(c). Respondent's conviction under C.R.S. section 18-9-202(1.5)(b), which states that "[a] person commits aggravated cruelty to animals if he or she knowingly tortures, needlessly mutilates, or needlessly kills an animal," establishes that Respondent committed these criminal acts with a knowing mental state.
Injury : Respondent seriously harmed dozens of innocent animals in his care. The appellate court, reviewing Respondent's criminal case, concluded that the evidence was sufficient to prove that Respondent had "tortured" these animals, based on these details:
• "[T]he home was covered in feces and urine, and all of the doors and windows were blocked or barricaded, which prevented any airflow. This caused an odor so strong that the investigators could not enter the home without respirators and hazmat suits. The investigators further testified that the odor burned their throats and made their eyes water even from outside the house."[6]
• "[T]he dogs appeared to have insufficient food ... the animals appeared to have been eating the drywall for nourishment. All of the investigators testified that there was no food left out for the animals, and the available water was dingy and dirty. Moreover, ... the carcass of a dead dog found in the home appeared to have been eaten by the other animals."[7]
• "[S]everal animals were found locked in closets.... the dogs were cramped and one of the dogs could not stand up in the space."[8]
• "[T]he animals were covered in feces, smelled like urine, and were extremely frightened.... several of the animals showed signs of upper respiratory infections. However, the veterinarian was unable to perform a full physical exam because the animals were 'so fearful and flighty' that they were 'unhandleable.' "[9]
The court of appeals concluded that a reasonable jury could infer that animals living in these conditions, hungry and underfed, would have experienced pain and suffering.[10]
Respondent also caused harm to the legal profession, as the reputation of the profession is undermined when lawyers engage in criminal acts.
ABA Standards 4.0-7.0-Presumptive Sanction
Respondent's felony conviction is best addressed by ABA Standards 5.12 and 7.2, which both call for suspension. The former recommends suspension when a lawyer knowingly engages in criminal conduct that does not involve, inter alia, misrepresentation, and that seriously adversely reflects on the lawyer's fitness to practice law. The latter recommends suspension when a lawyer *410 knowingly violates a professional duty, causing injury or potential injury to a client, the public, or the legal system. Suspension is also the presumptive sanction for Respondent's failure to report his conviction. ABA Standard 6.22 states that suspension is appropriate when a lawyer knowingly violates a court order or rule, thereby causing injury or potential injury to a client or party, or causing interference or potential interference with a legal proceeding.[11]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[12] Five aggravating factors are present here: Respondent's pattern of misconduct, his multiple offenses, the vulnerability of his victims, his substantial experience in the practice of law, and his illegal conduct.[13] Respondent's absence of prior discipline and the imposition of other penalties or sanctions are the only two mitigating factors of which the Court is aware.[14]
Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[15] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[16] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
The Court starts with the presumptive sanction of suspension and the People's recommendation of a one-year-and-one-day suspension. Because there is a dearth of case law weighing appropriate disciplinary sanctions for lawyers convicted of cruelty to animals, the Court must analogize to other cases and employ parallel reasoning.
Attorney Grievance Commission of Maryland v. Protokowicz provides a suitable starting point.[17] In that case, a lawyer assisted a former client in breaking into the home of the former client's wife; while there, the two men ransacked the home, clogged the toilet, stole personal property, and, as relevant here, killed the family kitten.[18] The lawyer pleaded guilty to charges including misdemeanor cruelty to animals and was sentenced to ninety days for that conduct.[19] During an appeal of the lawyer's disciplinary proceeding, the Maryland appeals court, reacting to the fact that the lawyer had "placed the ...
*411 cat in the microwave oven and activated the oven, killing the cat," remarked, "[t]his is outrageous behavior, a world apart from what this Court, the profession, and the public is entitled to expect from members of the bar."[20] The appeals court recognized that the lawyer's behavior was aberrant, the product of "alcoholism" for which the lawyer sought treatment; that the lawyer enjoyed an excellent reputation in the legal community with no prior instances of discipline; and that the lawyer had made restitution and expressed true remorse for his actions.[21] Nevertheless, the appeals court concluded that the egregious nature of the lawyer's conduct warranted a significant sanction.[22] Taking into consideration the lawyer's suspension for eight months before the court of appeals' opinion issued, that tribunal suspended the lawyer from the practice of law indefinitely, with the right to apply for reinstatement not less than one year from the date of the opinion's filing.[23]
The sanction levied in Protokowicz appears to be roughly in line with Colorado authorities. In In re Hickox, the Colorado Supreme Court cautioned that a lawyer's conduct "involving the infliction of bodily harm on another" typically warrants suspension of the lawyer's license, with the suspension's duration predicated on the seriousness of the harm along with the presence of mitigating and aggravating factors.[24] The Court also takes into account People v. McPhee , a case that predates issuance of the ABA Standards so has less precedential weight in this sanctions analysis.[25] In McPhee , a case involving not physical infliction of bodily harm but rather a lawyer's conviction of two drug-related felonies, the Colorado Supreme Court stated that "[f]or the most common cases, involving lawyers who commit felonies other than those listed in [ABA] Standard 5.11, ... a three-year suspension is appropriate."[26]
Here, as in Protokowicz , Respondent's underlying criminal conduct was particularly egregious: the slow starvation that dozens of animals faced while in his care was arguably more barbaric than the near-instant death of the family cat in Protokowicz . The horror those twenty dogs and eight cats endured at Respondent's hands should not be understated. But beyond Respondent's breach of fundamental obligations inherent in our humanity, his actions "do not resemble, by any standard, those of a mature, trustworthy" lawyer who can be relied on to faithfully and competently represent clients.[27] The serious harm Respondent's conduct has caused these vulnerable animals, and the stain that his conduct has left on the legal profession's reputation, is patent. Indeed, that harm was answered in the criminal justice system with two felony convictions and a sentence of eighteen months in the DOC's custody on count 29, as well as an additional twelve months on counts 30-57, to run consecutively.
Unlike in Protokowicz , however, here there is no showing of remorse, no showing of restitution, no showing of rehabilitation, and no showing of personal or emotional problems that might have led to Respondent's appalling treatment of the animals in his care. The record before the Court offers no basis to find any mitigation yet ample evidence to show that Respondent was in sufficient control of his faculties such that he knowingly, intelligently, and voluntarily waived his right to counsel and thereafter defended himself in his criminal trial and appeal. Respondent's felonious conduct was arguably more egregious than the misdemeanor *412 offense in Protokowicz , where, in effect, the lawyer was permitted to seek reinstatement after twenty months of suspension. Yet Respondent's conduct is not mitigated by any of the factors described in that opinion. Rather, the five aggravators in this case far outweigh the two mitigators. Moreover, Respondent failed to report his felony conviction to disciplinary authorities and never participated in this proceeding, though he was well aware of its course. Most central to this Court's analysis, however, is the serious harm Respondent caused twenty-eight innocent creatures and the detriment his behavior has had on the legal profession's reputation. Respondent's inhumane misconduct gravely undermines his fitness as a lawyer, and it warrants a suspension for two years.
III. CONCLUSION
Respondent knowingly tortured more than two dozen animals entrusted to his care. His callous disregard for their suffering shocks the moral conscience and, as relevant here, seriously adversely reflects on his fitness to practice law. The Court concludes that Respondent should be suspended from the practice of law for two years.
IV. ORDER
The Court therefore ORDERS:
1. WILLIAM KEVIN GOODE , attorney registration number 37063 , will be SUSPENDED from the practice of law for a period of TWO YEARS . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."[28]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or before Thursday, May 10, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Thursday, May 17, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Thursday, May 10, 2018 . Any response thereto MUST be filed within seven days.

See C.R.C.P. 251.15(b) ; People v. Richards , 748 P.2d 341, 346 (Colo. 1987).

At the hearing, the People mentioned that Respondent's Colorado law license has been administratively suspended since 2007 for failure to pay attorney registration dues.

See C.R.C.P. 251.1(b).

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

Ex. 2 ¶ 12.

Ex. 2 ¶ 13.

Ex. 2 ¶ 14.

Ex. 2 ¶ 15.

Ex. 2 ¶ 16 (citing Hynes v. State , 1 So.3d 328, 330 (Fla. Dist. Ct. App. 2009) ("[T]he animal's pain or suffering due to starvation is a matter of common sense and ordinary experience....") ).

The People suggest that ABA Standard 6.24 is more apt here. That Standard recommends admonition when a lawyer engages in an isolated instance of negligence in complying with a court order or rules and causes little to no actual or potential interference with a legal proceeding. The People reason that Respondent's failure to report only delayed commencement of his disciplinary proceeding, which resulted in little harm because he was administratively suspended at the time. The Court cannot endorse this rationale: the entry of default establishes that Respondent acted knowingly, not negligently. Further, because Respondent never reported his conviction, there was real potential that disciplinary authorities might not learn of his criminal acts. In any event, the Court's starting point in his case is suspension, because "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct." ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(c)-(d), (h)-(i), and (k).

ABA Standards 9.32(a) and (k).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

329 Md. 252, 619 A.2d 100 (1993).

Id. at 102.

Id.

Id. at 104.

Id.

Id. at 105.

Id.

57 P.3d 403, 405 (Colo. 2002).

728 P.2d 1292, 1294 (Colo. 1986).

Id.

Attorney Grievance Comm'n of Maryland v. Thompson , 367 Md. 315, 786 A.2d 763, 769, 771 (2001) (indefinitely suspending a lawyer following the lawyer's conviction for stalking a thirteen-year-old boy, and noting, "The concept of trust is an inseparable element of any attorney's practice. It is inconceivable, therefore, how we presently may authorize and entrust Respondent with the enumerable confidential, fiduciary, and trust-based relationships that attorneys, by their profession, are required to maintain in their dealings with their clients or the public.").

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.